## HOLLOWAY *v.* PORTER ET AL.

PROMISSORY NOTE.—*Negotiability of.*—All promissory notes are negotiable in this State by statute, but not as inland bills of exchange unless payable in a bank in this State; and in that case the note on its face must designate the particular bank in which it is payable.

SAME.—The difference between negotiability merely, and negotiability as inland bills of exchange, discussed.

SAME.—*Common Law.*—Promissory notes were not negotiable as inland bills by the common law, but were first made so negotiable by the statute of Anne.

ENGLISH STATUTES.—*What Adopted by this State.*—Chapter eighty-seven of the Revised Statutes, 1 G. & H. 415, adopts as the law of this State the common law of England and statutes in aid thereof of a general nature, etc., made by the British Parliament prior to the fourth year of James I. (A. D. 1607); but the statute of Anne relating to the negotiability of promissory notes was passed nearly one hundred years later, and was never in force here.

From the Carroll Common Pleas.

*B. B. Daily, D. B. Graham, L. B. Sims, J. H. Stewart,* and *R. P. Davidson,* for appellant.

*J. McCabe,* for appellees.

DOWNEY, J.—This case might be disposed of by a simple reference to the opinion in *Porter* v. *Holloway,* 43 Ind. 35, as the question decided in that case is the only question which need be decided in disposing of this one. After the overruling of the petition for a rehearing in that case, however, a brief was filed by the attorney for the appellees, in which he evinces so much confidence in the belief that the court has erred in its ruling in that case, that it seems proper that we should again consider the question decided. The note on which the complaint is predicated in this case, like the note in that case, is payable at "the bank in Delphi." We arrived at the conclusion in that case that in order to bring a promissory note within the statute making notes payable to order or bearer in a bank in this State negotiable as inland bills of exchange, the note on its face must designate the bank in which it is payable. We did not decide that it was necessary, in order to make promissory notes negotiable, that they must be made payable at a desig-

Holloway *v.* Porter *et al.*

nated bank, or at any bank. All promissory notes are made negotiable by indorsement, "so as to vest the property thereof in each indorsee successively," and the assignee may sue thereon in his own name. But whatever defence or set-off the maker had before notice of the assignment against an assignor, or against the original payee, he may have against their assignee And any such assignee, having used due diligence in the premises, may have his action against his immediate or any remote indorser, and in a suit against a remote indorser, he may have any defence which he might have had in a suit brought by his immediate assignee. These propositions are taken from the first four sections of the statute relating to promissory notes, etc., 2 G. & H. 658. The next section, the fifth, declares that the provisions of the third and fourth sections, which relate to the defences that may be made to an action, "shall not alter the law relative to bills of exchange, as it now is." That is to say, the law as to bills of exchange is not altered by the statute. Then follows the sixth section, which says: " Notes payable to order or bearer in a bank in this State, shall be negotiable as inland bills of exchange, and the payees and endorsees thereof may recover as in case of such bills." Counsel says if we look to the statute alone and to no other law, then we have no such thing in this State as commercial promissory notes. The ground is assumed that the only effect of the statute upon such notes is to bring them down, or to take away from them certain privileges and immunities which the statute assumes they already possess. Counsel says it is only by the act adopting the English common law and acts of Parliament in aid thereof, that we have such a thing as a promissory note, and that it is to the common law that we must look to ascertain what it takes to constitute a promissory note; what are its characteristics, its essential properties, etc. It is said that at common law they are of two kinds, negotiable and non-negotiable; negotiable when payable to order or bearer, and non-negotiable when payable to a particular person.

There must be some chronological mistake here. The date to which our adoption of the common law of England and the statutes made in aid thereof relates, is the fourth year of the reign of James I. See 1 G. & H. 415. The reign of James I. began in 1603. There is no satisfactory evidence that promissory notes were negotiable in England until long after that date. The statute of Anne, passed nearly a hundred years after the date to which our adoption of the common law relates, declared them negotiable. The preamble to that statute recites as the reason for its enactment, that promissory notes had been held not to be negotiable. That statute declared that "all notes in writing that shall be made and signed by any person, etc., whereby such person, etc., shall promise to pay to any other person, etc., his, her, or their order, or unto bearer, any sum of money mentioned in such note, shall be taken and construed to be, by virtue thereof, due and payable to any such person, etc. to whom the same is made payable; and also, every such note payable to any person, etc., his, her, or their order, shall be assignable or indorsable over, in the same manner as inland bills of exchange are or may be, according to the custom of merchants," etc. In *Grant* v. *Vaughn,* 3 Burr. 1516, decided in 1764, Lord MANSFIELD said: "Upon looking into the reports of the cases on this head, in the time of King William the Third and Queen Anne, it is difficult to discover by them, when the question arises upon a bill, and when upon a note, for the reporters do not express themselves, with sufficient precision, but use the words 'note' and 'bill' promiscuously."

It is certain that Lord HOLT in the reign of Anne denied the negotiability of promissory notes, and some writers say that this was the occasion of the passage of the statute of Anne. Sir WILLIAM BLACKSTONE says: " Promissory notes, or notes of hand, are a plain and direct engagement, in writing, to pay a sum specified at the time therein limited to a person therein named, or sometimes to his order, or often to the bearer at large. These also, by the same statute of 3 and

4 Anne, c. 9, are made assignable and indorsable in like manner as bills of exchange." Book 2, p. 467.

Chancellor KENT says: "Promissory notes are governed by the rules that apply to bills. The statute of 3d and 4th Anne made promissory notes payable to a person, and to his order, or bearer, negotiable like inland bills, according to the custom of merchants, and by the statutes of 9 and 10 William III., c. 17, and 3 and 4 Anne, inland bills are put upon the footing of foreign bills, except that no protest is requisite. These statutes have been generally adopted in this country, either formally or in effect, and promissory notes are everywhere negotiable. The effect of the statute is to make notes, when negotiated, assume the shape and operation of bills, and to render the analogy between them so strong, that the rules established with respect to the one apply to the other. It was a question much discussed before the statute of Anne, whether notes were not, by the principles of the law merchant, to be treated as bills ; and Lord HOLT vigorously and successfully resisted every such attempt. The history of that struggle is no longer interesting ; but there is no doubt that promissory notes were recognized as mercantile instruments, and a species of bills of exchange, by the canon law and the usage of trade ; and even by the French ordinance of 1673, long before Lord HOLT asserted them to be of late English invention." Vol. 3, p. 73.

Prof. PARSONS says: " We have not space to examine this question at length, and upon the authorities, but will content ourselves with saying, that we incline to hold, first, that foreign negotiable bills were in use and were known to the law long before negotiable notes were known ; and second, that inland negotiable bills were in use before negotiable notes, which, however, is not quite certain ; third, that inland bills and notes were confounded together in the use of them by merchants, and were considered as the same thing, both by them and by some of the courts ; fourth, that these notes, although not always discriminated by name from bills of

exchange, were certainly in common use before that statute—the statute of Anne—as may be inferred from the insisting of the merchants on the great mischief which would result from the denial of their negotiability, they telling Lord HOLT 'that it was very frequent with them to make such notes, and that they looked upon them as bills of exchange, and that they had been used for a matter of thirty years; and, fifth, that these notes were, therefore, at the time the statute was made, negotiable by the law merchant of England, which was and is as much a part of the law of England as—to use the strong language of Christian—the laws relating to marriage or murder." 1 Parsons Notes & Bills, 11. Lord HOLT insisted that " the notes in question are only an invention of the goldsmiths in Lombard street, who had a mind to make a law to bind all those who did deal with them," etc. HOLT was appointed Chief Justice in 1689. Conceding that the goldsmiths had been treating promissory notes as negotiable for thirty years, as they claimed, still that time would not reach back to the time to which our adoption of the common law relates. We look to the statute of Anne, as fixing the date at which promissory notes were definitely placed on a footing with bills of exchange in England, and made negotiable like them.

The statute of Anne is not in force in this State. It was not yet enacted at the date to which our adoption of the laws of England relates. Hence we must look to our own statutes for the law relating to the negotiability of promissory notes. By reference to it, we find that only such as are payable to order or bearer, in a bank in this State, are negotiable as inland bills of exchange. All others are made negotiable by the statute, but not as inland bills of exchange. They are governed by different rules. But this question ought not to be regarded as an open one in this State. As far back in the history of the adjudications of this court as *Bullitt* v. *Scribner*, 1 Blackf. 14, it was said that promissory notes were not governed by the law merchant, until they were put upon a footing with bills of exchange by the statute of Anne.

That statute was never in force in this State.   See note 1 to the same decision.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

Petition for a rehearing overruled.