Filed Oct. 23, 1888.

No. 13,401.

## POOL v. ANDERSON.

PROMISSORY NOTE.—*Negotiability.*—*Irregular Endorsement.*—One who, before delivery, writes his name upon the back of a negotiable promissory note, of which he is neither the payee nor endorsee, is, in the absence of explanatory evidence, liable to the payee only as endorser; but it is not so where the note is not negotiable by the law merchant, in the absence of a special contract to that effect.

SAME.—*Endorsement by Stranger Before Delivery to Payee.*—*Liability.*—Where a person, not the payee of a promissory note not negotiable by the law merchant, places his signature on the back of the paper at or prior to the time of its inception, without making an express contract defining the nature and extent of his undertaking, he will be held liable to the payee as a surety or joint promisor.

SAME.—*Notice of Non-Payment.*—A surety or joint promisor is bound to take notice of the default of his principal or joint maker, and as to either notice of non-payment is not necessary.

SAME.—*Stipulation Waiving Notice of Non-Payment.*— *When Material.*—A stipulation in a promissory note waiving notice of non-payment is material

only when the note is governed by the law merchant and capable of strict endorsement.

From the Rush Circuit Court.

*J. K. Ewing* and *C. Ewing*, for appellant.

*B. L. Smith* and *W. J. Henley*, for appellee.

MITCHELL, J.—This was an action by Thomas A. Pool against William F. Spradling, Daniel G. Neff and James W. Anderson to recover the amount due on a promissory note, dated August 14th, 1884, calling for the payment of $850, with eight per cent. interest, due twelve months after date. The note was in the ordinary form of paper not negotiable by the law merchant, and was payable to the plaintiff at Greensburgh, Indiana. Spradling and Neff signed their names as makers on the face of the note, in the customary manner, while the name of Anderson was written across the back, before it was delivered to the payee, who brought the suit. Beyond the fact that the paper was signed in the manner described, there is nothing to indicate the relation of Anderson to the note, or to the other defendants.

Assuming that it was necessary to show an excuse for not having used diligence by bringing suit in the first term of court after the maturity of the note, in order to hold Anderson, the plaintiff adapted the first paragraph of his complaint so as to rely upon a stipulation, such as is usually found in mercantile paper, whereby the drawers and endorsers agree to waive presentment for payment, and protest and notice of non-payment, etc., as an excuse for not having sued.

The court below was of the opinion, nevertheless, that the complaint did not state facts sufficient to constitute a cause of action against Anderson, and gave judgment accordingly upon a demurrer filed by the latter. The conclusion at which we have arrived renders it unnecessary that we should examine any other question than that which arises upon the

ruling on the demurrer to the first paragraph of the complaint.

Counsel seek to maintain the judgment appealed from upon the assumption that the unexplained signature of a third person placed upon the back of non-mercantile paper, or paper negotiable under the statute merely, before it is delivered to the payee, imposes, *prima facie*, the liability of an endorser upon the person whose name is so signed, and that a waiver of notice of non-payment contained in the body of the note is not an available excuse for failing to use the diligence required in order to hold an endorser of such paper liable. *Drake* v. *Markle*, 21 Ind. 433 (83 Am. Dec. 358), *Roberts* v. *Masters*, 40 Ind. 461, *Pennington* v. *Hamilton*, 50 Ind. 397, *Dale* v. *Moffitt*, 22 Ind. 113, and other decisions of this court, are relied on as sustaining the view contended for.

The law merchant attributes to the act of one who endorses a negotiable instrument in blank, an intent thereby to warrant the payment of the note, provided it is presented to the maker at maturity, and due notice of the fact of non-payment is given to the endorser. Ordinarily, and in the regular course, the endorsement of a bill or note by one not a party thereto follows the endorsement of the payee, and in such a case little difficulty is experienced in determining the liability assumed by the endorser to the person into whose hands the note may thereafter come.

The present case involves the liability of a stranger, who signed his name upon the back of a paper not negotiable by the law merchant, before it was delivered to the payee, who held the same when the suit was commenced. The inquiry is, what is the liability or obligation of one who thus signs to the payee?

The decisions of different courts present an irreconcilable conflict of views upon the general subject under consideration. It will be noted, however, that the cases in other jurisdictions relate almost exclusively to notes negotiable as inland

bills of exchange. Whatever diversity exists in the decided cases, it can not be doubted that a stranger who writes his name on the back of a promissory note before it is delivered, whether it be negotiable or non-negotiable according to the law merchant, does so in order to give the maker credit, or the note currency, and with the intention to pledge himself in some shape for its payment. *Eilbert* v. *Finkbeiner*, 68 Pa. St. 243.

All the authorities concur in holding that the act constitutes a contract which is to be construed in such a way as to render it available to carry into effect the intention of the parties, consistent with settled rules of law. *Good* v. *Martin*, 95 U. S. 90; *Rey* v. *Simpson*, 22 How. 341; 15 Cent. L. J. 82.

The rule as established by the decisions of this court is to the effect that one who writes his name upon the back of a negotiable promissory note, of which he is neither the payee nor endorsee, before it is delivered, in the absence of extrinsic explanatory evidence, thereby assumes the liability of an endorser. *Kealing* v. *Vansickle*, 74 Ind. 529, and cases cited; *Houck* v. *Graham*, 106 Ind. 195; *Knopf* v. *Morel*, 111 Ind. 570.

Presumptively, his contract with the payee is that of an endorser of mercantile paper.

Without regard to the decisions in some of the other States, this rule, as applied to paper governed by the law merchant, must now be accepted as no longer open to question in this court. As respects paper of that character, the rule above stated has been uniformly applied for nearly a half century, and as stability and certainty in the law are of the first importance in commercial transactions, it is far better that a rule once settled should remain than that it should be so clearly right as to be beyond criticism.

The earlier decisions made a distinction between negotiable and non-negotiable paper. Thus in the case of *Wells* v. *Jackson*, 6 Blackf. 40, DEWEY, J., stated the rule in the fol-

lowing language : " The deduction which we draw from these
authorities is, that the blank indorsement of unnegotiable pa-
per, made at the date of the contract, and unexplained by
extrinsic testimony, confers upon the payee the authority to
hold the indorser liable on the original contract, as a surety ;
and that a similar unexplained indorsement of negotiable
paper renders the indorser liable only as indorser, with the
ordinary rights and privileges incident to that character. But
that in either case, the liability designed to be assumed, and the
authority intended to be given by the indorsement, may be
explained by the attendant circumstances, and the *prima facie*
responsibility be changed into one of another kind."

The terms unnegotiable and negotiable were employed by
the learned judge who wrote the opinion from which the
above quotation is taken, advisedly, and in the light of a
statute, not materially different from that now in force, regu-
lating the assignability of promissory notes, and providing
that notes drawn payable in a specified manner at a bank in this
State should be negotiable as inland bills of exchange. The
statute now in force, or one substantially like it, concerning
promissory notes and bills of exchange, has been in existence
in this State ever since the enactment of the law approved
January 29th, 1818, which was passed by the second leg-
islative assembly convened in the State.    See Acts of 1818, p.
232.

This statute, although less comprehensive in its scope, has
occupied and still supplies substantially the place in our com-
mercial system that the statute of Anne does in the commer-
cial law of England.    1 Daniel Neg. Inst., section 5 ; *Mix* v.
*State Bank*, 13 Ind. 521.

So far as the statute places promissory notes upon the foot-
ing of inland bills of exchange, it subjects them to the law
merchant and all its incidents, that law having been incor-
porated into our system as part of the common law. *Bul-
litt* v. *Scribner*, 1 Blackf. 13 ; *Holloway* v. *Porter*, 46 Ind. 62.

While it is true, the statute makes all promissory notes

" negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively," only notes payable to order or bearer in a bank in this State are negotiable as inland bills of exchange. *Melton* v. *Gibson,* 97 Ind. 158.

It is clear, therefore, that the effect of the rule laid down in *Wells* v. *Jackson, supra,* was that where one, not the payee of a note not negotiable as an inland bill of exchange, wrote his name upon the back of the paper prior to or at the time of its inception, without any extrinsic agreement expressing the real nature of the obligation intended to be assumed, he thereby conferred authority upon the payee to hold him liable on the original contract as a surety or joint promisor, while a similar act in respect to a note negotiable as an inland bill subjected the person so signing presumably to the liability, and entitled him to the immunity, of an indorser. This rule, observing the distinction between negotiable and non-negotiable paper in a commercial sense, is logically maintainable, and can be supported upon principle and authority. It was followed and recognized for twenty years and more. *Early* v. *Foster,* 7 Blackf. 35 ; *Harris* v. *Pierce,* 6 Ind. 162; *Cecil* v. *Mix,* 6 Ind. 478 ; *Vore* v. *Hurst,* 13 Ind 551 (24 Am. Dec. 269) ; *Sill* v. *Leslie,* 16 Ind. 236.

In *Snyder* v. *Oatman,* 16 Ind. 265, the distinction between notes negotiable under the statute, so as to vest the property thereof in the endorsees successively, and those negotiable as inland bills, seems to have been abandoned.

In *Drake* v. *Markle,* 21 Ind. 433, while recognizing the rule as enunciated in *Wells* v. *Jackson, supra,* that the signing of negotiable and unnegotiable paper on the back by a stranger before delivery did not subject the person signing to the same *prima facie* liability, it was nevertheless distinctly ruled that, since every instrument having the requisite characteristics of a promissory note was negotiable under the statute, a person who signed a note so negotiable, although not as an inland bill of exchange, was presumably bound as an endorser. This case, as the head-note of the reporter cor-

Pool *v.* Anderson.

rectly indicates, overrules *Wells* v. *Jackson, supra,* and all the other decisions above cited, to the extent that they are, as we have already indicated, inconsistent with it.   Some later cases have cited and followed *Drake* v. *Markle, supra,* and the previous decisions, without finding it necessary, upon the facts involved, to give attention to the apparently inconsistent conclusions arrived at in some of those cases.

The question confronts us in the present case in a manner different from that assumed in any of the decisions referred to, so far as we have observed.

On the appellant's behalf it is insisted that if one signing a note in the manner already described incurs the liability of an endorser, then the usual incidents peculiar to that relation must obtain, and that hence the waiver of notice of non-payment upon which the plaintiff relied in framing the first paragraph of his complaint was effectual to fix the liability of the defendant Anderson, and no further diligence was required.   That the liability of an endorser, strictly speaking, is fixed by notice of non-payment, and that when his liability is once fixed the endorser has no legal cause of complaint on account of delay in bringing suit, and that notice of non-payment may be waived in such a case by a stipulation in the note such as that relied on, are propositions too familiar and well settled to justify elaboration.   *Lowry* v. *Steele,* 27 Ind. 168 ; *Rooker* v. *Morris,* 61 Ind. 286 ; *Neal* v. *Wood,* 23 Ind. 523 ; *Fitch* v. *Citizens National Bank,* 97 Ind. 211 ; 2 Daniel Neg. Inst., sections 1090, 1095.

Accordingly, it was held in *Bronson* v. *Alexander,* 48 Ind. 244, following the settled rule, that persons whose liability was there in question, other than the payee, who signed their names upon the back of a promissory note payable in a bank in this State, became presumably liable as endorsers, and that as such they had been discharged for want of notice of the dishonor of the paper.

The proposition upon which the discussion rests must resolve itself into the following inquiry :   Can a stranger who

signs an ordinary promissory note not negotiable by the law merchant, under the circumstances disclosed in the present case, stand in the relation of an endorser to the payee to whom it is afterwards delivered, without a special contract to that effect? Upon principle there can be no other than a negative answer to this question.

This conclusion follows from the fact that the liability of one whose name appears upon a promissory note, no matter when or where it is written, or what the character of the note is, must depend upon a contract which is either expressed in words or implied by law. *Seymour* v. *Mickey*, 15 Ohio St. 515.

When a person other than the payee or endorsee signs his name upon the back of a note governed by the law merchant, before it has its inception, it may, without great impropriety, be held that commercial law supplies the undertaking into which he enters with the payee, which is in effect that if the maker fails to pay at maturity and the endorser is duly notified of the dishonor of the note, he will pay it. This, according to the rulings of this court, is the implied or commercial contract which the law imports into the transaction, in the absence of an express agreement of a different character, and a contract implied by law is as binding as if it were written in words. *Stack* v. *Beach*, 74 Ind. 571. To these rulings we adhere. This constitutes the person so signing, as between himself and the payee, *prima facie* a first endorser, with all the rights and liabilities incident to that relation. *Kealing* v. *Vansickle, supra ;* 1 Daniel Neg. Inst., sections 714, 666.

One can not, however, become an endorser, in a commercial sense, of paper that is not negotiable according to the law merchant. *Vore* v. *Hurst, supra ;* 1 Daniel Neg. Inst., section 709.

Hence, the signature of a third person placed on the back of a note not so negotiable, before its delivery to the payee,

creates no implied or commercial contract whatever. *Chaddock* v. *Vanness*, 35 N. J. L. 517.

As has been remarked, it will be assumed that one who signs his name upon the back of a note, whatever its description may be, does so for some purpose, and that he intends to become responsible for its payment in pursuance of some contractual obligation. If, therefore, the law imports into the transaction no contract whatever, and there is no possibility of raising the ordinary obligation of an indorser, it must be assumed, until it appears whether any contract different from that written on the paper was entered into, and what the character of that contract was, that all those, other than the payee, who signed before the execution of the paper, whether upon the back or face, intended to become bound according to the terms of the note as joint promisors. It is true, one who writes a blank endorsement upon a note not payable in bank, for the purpose of transferring the title, thereby enters into a definite contract by which he warrants that the note is a valid instrument, that the maker is liable and able to pay it, and that it will be collectible at maturity by the use of due diligence. *Ward* v. *Haggard*, 75 Ind. 381 ; *Mathes* v. *Shank*, 94 Ind. 501, 505.

This, however, is the contract which the law attributes to the blank endorsement of a promissory note by an assignor. It is not the undertaking of an endorser, nor can we conceive of any principle which would justify a court in attributing such an undertaking to one who signs his name upon the back of a note before its inception in order to give the maker credit with the payee. Such a note, under our statute, is open to all defences by the maker, into whosesoever hands it may come, and no good reason can be suggested why the court should hold a person so signing to have made a contract upon which he would be held liable after a successful defence by the maker. Our conclusion, therefore, is, that when a person not the payee of a note, such as that involved in the present case, places his signature on the back of the

paper at or prior to the time of its inception, without making an express contract defining the nature and extent of his undertaking, he will be held liable according to the rule in *Wells* v. *Jackson, supra,* upon the original contract, as a surety or joint promisor. This conclusion renders the stipulation in the note waiving notice of non-payment wholly immaterial, as such a stipulation is relevant only to notes governed by the law merchant, and· which are capable of strict endorsement.

A surety or joint promisor is bound to take notice of the default of his principal. As to either, notice of non-payment is not necessary. *Fitch* v. *Citizens Nat'l Bank, supra; Scott* v. *Shirk,* 60 Ind. 160.

The liability of Anderson being presumably that of a surety or joint maker, the stipulation referred to can not affect the contract. *Core* v. *Wilson,* 40 Ind. 204; *Malbon* v. *Southard,* 36 Me. 147.

While the pleader in framing his complaint did not proceed upon a strictly correct theory, yet as the facts stated show a *prima facie* cause of action against the appellee, the court erred in sustaining the demurrer to the complaint.

The judgment is therefore reversed, with costs.

Filed Oct. 23, 1888.