## PAPE v. RANDALL.

[No. 1,986.   Filed June 9, 1897.]

SPECIAL VERDICT.—*Harmless Error.*—Where there is a special finding or a special verdict, errors in overruling demurrers to pleadings are harmless. *p. 54.*

PRINCIPAL AND SURETY.—*When the Relation Exists.*—Neither of two stockholders of a corporation who execute a note for the benefit of such corporation by signing the note on its face will be held a surety for the other, although the proceeds were used, to the knowledge of both, in payment of a note of the corporation indorsed by one of them, and the other was president of the corporation and first signed the note, but with the understanding that the former was to subsequently sign it. *pp. 60–63.*

From the DeKalb Circuit Court.   *Reversed.*

*Robert Lowry*, for appellant.

*Randall & Doughman*, for appellee.

BLACK, J.—An action was brought in the Allen Circuit Court by one William E. Mossman, as payee, against the appellant and appellee as makers, upon a promissory note. These defendants separately answered the complaint of Mossman by general denials, and filed cross-complaints against each other, each therein claiming to be the surety for the other upon said note.

A trial resulted in a finding and judgment for the plaintiff Mossman against both the defendants, for $1,545.16; and the cause was continued as to the question of suretyship between the appellant and the appellee.

The venue having been changed to the court below, the appellant filed an additional and supplemental paragraph of complaint against the appellee, and the latter withdrew the pleadings theretofore filed by him, and filed a general denial of the several paragraphs of the cross-complaint of the appellant, and filed also a pleading denominated therein as a supplemental cross-complaint against the appellant. The appellant's demurrer to the last mentioned pleading of the appellee having been overruled, the appellant filed an answer of general denial.

The issues thus formed between the appellant and the appellee were tried by jury, and a special verdict was returned.

The appellant's motion for a new trial was overruled, but the questions presented by the motion can not be decided by us, for the reason that the longhand manuscript of the reporter's shorthand notes is not in the record, as it does not appear to have been filed in the clerk's office before it was incorporated in the bill of exceptions which contains it.

A motion of the appellant for judgment in his favor on the special verdict was overruled, as was also his motion for judgment in his favor on the appellee's complaint, and for the appellee on the appellant's complaint.

There has been some discussion by counsel of the action of the court in overruling the appellant's demurrer to the cross-complaint of the appellee, but it has been held that where there is a special finding or a special verdict errors in overruling demurrers to pleadings are not material. *Woodward* v. *Mitchell*, 140 Ind. 406.

The facts were stated in the special verdict as follows:

"1.   That a corporation was organized under the

laws of the State of Indiana relative to the organiza-
tion of corporations, prior to April 5, 1888, called the
Pennington Pulley Works, in the city of Ft. Wayne,
Indiana, with its principal office in said city of Ft.
Wayne.

"2. That said corporation is and was doing busi-
ness in said city of Ft. Wayne, Indiana, on said 5th
day of April, 1888, and on that day, by its proper offi-
cers, said corporation executed its note to Dupe and
Higgins, which said note by its terms became due four
months after date, and that said defendant Perry A.
Randall wrote his name on the back of the said note.

"3. That the entire capital stock of said corpora-
tion was fifty thousand dollars.

"4. That on the 10th and 15th days of May, 1888,
said defendant Charles Pape became an owner of a
part of said stock, of the face value of thirty-nine
thousand dollars, by purchase thereof.

"5. That on said 15th day of May, 1888, said de-
fendant, Perry A. Randall, was the owner of a part
of said stock, of the face value of ten thousand dollars.

"6. That immediately after the defendant Charles
Pape became the owner of said shares of said capital
stock of said corporation, and from the time of his
election until after the 31st day of August, 1888, he
continued to hold said office of president and to dis-
charge the duties of said office.

"7. That from the time said defendant Charles
Pape became president of said corporation until said
31st day of August, 1888, he, with the assistance of
Perry A. Randall and one Allen McQuiston, who was
employed as a clerk in the office of said corporation,
supervised and controlled the business management
of said corporation.

"8. That said note executed by said corporation to
said Dupe and Higgins was in words and figures as
follows, to wit:

" 'April 5th, 1888.

Four months after date we promise to pay to the order of Dupe and Higgins eleven hundred and forty-five dollars, negotiable and payable at Hamilton National Bank, Ft. Wayne, with interest at eight per cent. per annum and attorney's fees. Value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest, or notice of protest, and non-payment of this note.

" '$1,145.00.   Due August 8th.

Pennington Pulley Works,

By Jas. A. Pugh, Secretary.'

"And that said note was endorsed by said payees, Dupe and Higgins, and by P. A. Randall and J. D. Bond, cashier, for collection, and John S. Patterson, cashier Piqua National Bank, of Piqua, Ohio, for collection, and Theo. Stanwood, cashier First National Bank, Cincinnati, Ohio, for collection.

"9.   That said note was not protested, and that at no time was payment of said note demanded of said defendant, Perry A. Randall, who had endorsed the same.

"10.   That said note payable to Dupe and Higgins was paid at the Hamilton National Bank of Ft. Wayne, Indiana, on the 11th day of August, 1888, by check of the Pennington Pulley Works drawn by Allen McQuiston, who was then a clerk for and working in the office of said corporation, on said Hamilton National Bank, where said corporation then had a balance of money to its credit in excess of the amount of said note.

"11.   That on said 10th day of August, 1888, said Charles Pape and Perry A. Randall negotiated a loan of one thousand dollars from one William E. Mossman, and at the suggestion of the said Pape, commu-

nicated to said Randall by said William E. Mossman, said Perry A. Randall signed said note, which is the note set out in the complaint of the plaintiff Mossman, writing his name under the name of said Pape, whose name had been signed to said note before it was presented to said Randall for his signature, and that said Mossman delivered to said Pape, in consideration of said note, at the time said Pape signed said note, a check on the Columbia City Bank for one thousand dollars; said Pape caused said check to be deposited in said Hamilton National Bank, and that said check, together with some other small amounts in said bank to the credit of said Pennington Pulley Works, made up the amount upon which said Allen McQuiston drew said check in payment of said Dupe and Higgins note.

"12. That said check received by said Pape from said Mossman was made payable to said Pape, and when delivered to the said Hamilton National Bank was endorsed by him and by no other person or corporation.

"13. That there was no understanding or agreement between the defendants Pape and Randall that he, Randall, would sign said note to Mossman; nor was there any understanding or agreement between said Mossman and the defendant Randall or the defendant Pape that said Randall would sign said note with the defendant Pape; that the defendant Pape signed said note and delivered the same to plaintiff Mossman, and thereupon said Mossman delivered to said Pape said check; that after the signing and delivery of said note by said Pape to Mossman, and the delivery of said check by said Mossman to the said Pape, the said Pape requested the said Mossman to have defendant Randall sign said note, and that afterwards said Mossman presented said note to the said Randall, and said Randall, upon request, signed the same.

"14. That the defendant Randall had knowledge of what use was to be made of the consideration of the said note to Mossman; nor did he in any manner direct what disposition should be made of the money received from said Mossman as a consideration for said note.

"15. That the plaintiff, Mossman, recovered a judgment in the Allen Circuit Court upon the said note on the 20th day of June, 1894, against the defendants Pape and Randall. That the amount of said judgment, including principal, interest, attorney's fees, and costs, amount to $1,591.01, and each of said defendants have paid thereon the sum of $833.30."

The formal conclusion was as follows: "If the law upon the foregoing facts is with the defendant Pape, we find for the defendant Pape upon his cross-complaint, and that he is surety for the defendant Randall, and assess his damages at $833.30. If the law upon the foregoing facts is with the defendant Randall, we find for the defendant Randall upon his cross-complaint, and that he is surety for the defendant Pape, and assess his damages at $833.30."

The court adjudged that the appellant was principal and the appellee surety for him on the note sued on, and that the latter recover from the former $833.30.

Whatever lack of fullness there may be in the statement of facts in the verdict, however desirable may seem a finding pro or con upon any particular matter of fact concerning which the verdict is silent, the verdict must be taken, as it stands, as a full statement of all the facts proved, when it is to be determined what judgment should be rendered upon it.

It is quite strongly urged by learned counsel for the appellant, in substance, that as the appellee, as indorser upon the note made by the Pennington Pulley

Works to Dupe and Higgins, was liable jointly with that corporation—section 271, Burns' R. S. 1894 (270, Horner's R. S. 1896)—therefore he should be regarded as having received, in effect, the consideration for the note in suit, the proceeds of which were applied in part to the payment of the Dupe and Higgins note, and hence the appellee should be treated as the principal debtor, and the appellant should be treated as surety upon the note in suit.

The Dupe and Higgins note was paper negotiable by the law merchant. The liability of the appellee thereon was that of an indorser. Presentment for payment and notice of nonpayment were not needed to fix his liability to pay the note; these otherwise necessary steps being expressly waived in the note. *Sohn* v. *Morton*, 92 Ind. 170; *Fitch* v. *Citizens Nat'l Bank*, 97 Ind. 211; *Pool* v. *Anderson*, 116 Ind. 88, 1 L. R. A. 712.

The law attributes to him an intent to warrant the payment of the note, without presentment thereof to the maker at maturity, and without notice to the indorser of nonpayment. *Pool* v. *Anderson, supra.* He undertook that he would pay the note if not paid by the maker at maturity. *DePauw* v. *Bank of Salem*, 126 Ind. 553; *Hoffman* v. *Hollingsworth*, 10 Ind. App. 353.

But as between the appellee and the prior parties to the note he was not liable. The payment of the note by a prior party, or the release of a prior party, would release the appellee. He might have been discharged from obligation by the giving of a definite and binding extension of time by the holder to the maker, before or after maturity.

If he had paid the note, he might have proceeded against parties prior to himself on the note; and he would have been entitled to be subrogated to securities held by the creditor. "The indorser who pays a

note is undoubtedly entitled to his recourse against the makers." *Moorman* v. *Wood*, 117 Ind. 144, 149.

While the appellee was liable severally or jointly with the prior parties to the holder of the note, yet as to others than his indorsee and subsequent holders it was not his debt, and the ultimate obligation was upon the maker of the note, the corporation by which the note was in fact paid. It does not appear that the corporation was insolvent. Though this payment released the appellee, and therefore may be said to have benefited him, yet it was a benefit which he was entitled to demand of the corporation. The money with which the note was paid by the corporation was in part procured through the Mossman note, executed by appellant and appellee, both stockholders, and the former the president, of the corporation. The avails of the note went directly to the benefit of the corporation in which both the makers were interested, and indirectly to the benefit of the indorser of its note so discharged. No express agreement between the parties as to the relation of the appellant and the appellee on the Mossman note is shown. We cannot regard the mere fact that the appellee was indorser upon the Dupe and Higgins note as a circumstance requiring a legal conclusion that the appellee was the principal and the appellant his surety upon the Mossman note.

The Dupe and Higgins note was executed on the 5th of April, 1888, and the appellee wrote his name on the back of said note. On the 15th of May, 1888, the appellee was the owner of capital stock of a certain face value. When he became the owner thereof is not shown. On the 10th and 15th of the same month the appellant became the owner of a part of the capital stock of the corporation, and immediately thereafter became its president, and he was discharging the duties of that office when the Mossman note was made

and the Dupe and Higgins note was paid, and both the appellant and the appellee, and the clerk, McQuiston, supervised and controlled the business management.

The appellant and the appellee negotiated the loan from Mossman; that is, at the very least they both treated with Mossman for the loan for which the note in suit was made. The appellee had knowledge of what use was to be made of the consideration of the note. Of course, the appellant also, who made use of the consideration, had the same knowledge. The appellee did not direct what disposition should be made of this consideration. It was not necessary that either he or the appellant should give such direction about a matter so understood between them. There was an understanding and agreement between the appellant and appellee that the latter should sign the note.

The formal method of procuring the money and applying it to the extinguishment of the indebtedness of the corporation included the taking of Mossman's check payable to the appellant, who was president of the corporation, the indorsing of the check by the appellant, the depositing of the check in the bank to the credit of the corporation, the drawing of the corporation's check upon the funds of the corporation in part so made up in the bank, in payment of the Dupe and Higgins note, and the giving of the note in suit. It is stated that there was not any understanding or agreement between Mossman and the makers that the appellee would sign the note with the appellant, but they both negotiated the loan, both understood the purpose to which it was to be applied, and it was understood and agreed between them that both would sign the note, and the appellant, instead of himself presenting the note to the appellee for his signature,

requested Mossman to do so, in which request Mossman by his act acquiesced. It was not merely upon the request or suggestion of the appellant or of Mossman, made after a completed transaction between Mossman and the appellant, that the appellee signed. He did so because he and the appellant had negotiated the loan from Mossman for the purpose for which the borrowed money was used, and understood and agreed that the appellee was to sign the note to be given therefor. Mossman recovered judgment against both the makers, and this he could not rightfully do if there were no consideration for the note as to the appellee. It is not contended that the appellee was not bound upon the note.

"A mere naked promise to pay the already existing debt of another, without a new consideration, is void." *Starr* v. *Earle*, 43 Ind. 478.

A contract of suretyship without consideration is void. *Brant* v. *Barnett*, 10 Ind. App. 653. The consideration for the surety's engagement may be some benefit or advantage to the principal or the surety or some disadvantage to the creditor. Neither of the parties to the Mossman note has treated the promise made by the appellee through his signature to that note as a promise without any consideration to pay a pre-existing debt. It does not appear that the negotiation for a loan in which both the appellant and the appellee participated, was a treaty for a loan to the appellant, or that the appellee had requested Mossman to make the loan to the appellant, or had promised to become a surety for the appellant. It appears that it was for a loan for the purpose of paying off the note of the corporation.

To determine properly the relations of the parties to the Mossman note, the whole transaction concerning it should be looked through.

The various successive steps relating to the execution of that note, as described in the verdict, should be considered together as forming a single transaction, and, so considered, it would seem that to regard either of the parties to this appeal as surety for the other would be giving too slight significance to the substantial facts. They borrowed money for the corporation in which they were both interested as stockholders, and they gave their joint note to the lender. Each has paid a like amount upon the judgment obtained against them upon that note. The burden was upon each to show that he was a surety for the other. The special verdict does not establish the suretyship of either. Neither is shown to have a right to recover of the other.

The judgment is reversed, with instruction to render judgment upon the special verdict in accordance with this opinion.