HARDIN ROADS *vs.* EMELINE R. WEBB, Admx.

Cumberland.    Opinion March. 4, 1898.

*Bills and Notes.    Negotiability.    Indorsement.    Sales.    Lex Fori.    R. S. 1881*
*of Indiana, § 5506.*

By the law merchant, a note, to be negotiable, must run to order or bearer, be
payable in money, for a certain definite sum, on demand, at sight, or in a
certain time, or upon the happening of an event which must occur, and pay-
able absolutely and not upon a contingency.

Where notes call for payment of a certain sum, " and attorneys' fees," the latter
being uncertain, indefinite, and to some extent contingent, *held;* that this
provision renders the notes not negotiable by the law merchant.

Whether promissory notes payable "on or before" a named date are negotiable
or not, the court declines to decide.

A statute of Indiana provides that "notes payable to order or bearer in a bank
in this state shall be negotiable as inland bills of exchange, and the payee
and indorsee thereof may recover as in case of such bills."    The Indiana
court holds that "so far as the statute places promissory notes upon the
footing of inland bills of exchange, it subjects them to the law merchant,
and all its incidents."

In an action in the courts of this state by the holder against the payee of such
a note payable in Indiana and which the payee had in writing thereon
"assigned, transferred and delivered to the plaintiff or order all his right,
title and interest" therein, in consideration of a sale of the note by the payee
to the holder, *held;* that the transfer being completed by delivery in Indiana,
the validity and construction of the contract of the written transfer will be
governed by the lex loci contractus; but upon questions of general commer-
cial law like this, this court will apply the rule of lex fori to all matters
pertaining to the remedy according to its judgment, and is not bound by
decisions of the courts in Indiana.

In a suit by an indorsee against an indorser, the latter may show that the
understanding and agreement between the parties was that the indorser
should not be holden.    The indorser may prove such an express contract by
parol evidence, or it may satisfactorily appear from the transaction itself.

*Held;* that the plaintiff is assignee of a non-negotiable note.    The relation of
indorser and indorsee did not exist between the plaintiff and the payee, and
this action cannot be maintained.

This case being submitted to the law court upon an agreed statement of facts,
the court is at liberty to draw such inferences from them as a jury would be
authorized to draw.    *Held;* that the understanding between the payee and

the plaintiff was that the payee by the aforesaid written transfer should not become liable as indorser; but that the plaintiff purchased the note, and the mortgage securing the same as a commodity, relying solely upon the responsibility of the makers and the mortgage security.

ON EXCEPTIONS BY DEFENDANT AND AGREED STATEMENT.

The case appears in the opinion.

*Franklin C. Payson and Harry R. Virgin*, for plaintiff.

Exceptions: The declaration contains a special count upon each note, and the money counts. The demurrer being general, if one count be good, the exceptions must be overruled. *Dexter Savings Bank* v. *Copeland*, 72 Maine, 220; *Concord* v. *Delaney*, 56 Maine, 201, 204; *Blanchard* v. *Hoxie*, 34 Maine, 376, *Skolfield* v. *Skolfield*, 88 Maine, 254.

Form of indorsement: 1 Daniel Neg. Ins. (3rd Ed.) § 688; *Adams* v. *Blethen*, 66 Maine, 19; *Markey* v. *Corey*, 66 N. W. Rep. 493; *Maine T. & B. Co.* v. *Butler*, 45 Minn. 506; *Sands* v. *Wood*, 1 Iowa, 263; *Sears* v. *Lantz*, 47 Iowa, 658; 1 Edw. Bills & Notes, § 398; Morton Bills & Notes, (2d Ed.) 109; *Henderson* v. *Ackelmire*, 59 Ind. 540; *Fassin* v. *Hubbard*, 55 N. Y. 470; *Vanzant* v. *Arnold*, 31 Ga. 210; *Dixon* v. *Clayville*, 44 Md. 573; *Shelby* v. *Judd*, 24 Kan. 166; *Mary* v. *Dyer*, (Ark.) 21 S. W. Rep. 1064; Randolph Com. Pap. § 704.

Negotiability: 1 Daniel Neg. Ins. § 868, and cases cited; *Bell* v. *Packard*, 69 Maine, 105; *Milliken* v. *Pratt*, 125 Mass. 374; *Cook* v. *Litchfield*, 9 N. Y. 279.

Contract to be performed in Indiana and interpreted according to its laws: *Lindsay* v. *Hill*, 66 Maine, 212; *Thompson* v. *Reed*, 75 Maine, 404; *Bond* v. *Cummings*, 70 Maine, 125; *Scudder* v. *Union Nat. Bank*, 91 U. S. 406; *Wright* v. *Andrews*, 70 Maine, 86. Notes negotiable in Indiana: R. S., 1881, § 5506; *Melton* v. *Gibson*, 97 Ind. 158; *New* v. *Walker*, 108 Ind. 365; *Pool* v. *Anderson*, 116 Ind. 88; *Depauw* v. *Bank*, 126 Ind. 553; *Davis* v. *McAlpine*, 10 Ind. 137.

Negotiability of note not affected because payable "on or before." *Walker* v. *Woolen*, 54 Ind. 164; *Woollen* v. *Ulrich*, 64 Ind. 120; *Noll* v. *Smith*, 64 Ind. 511; *Glidden* v. *Henry*, 104

Ind. 278; *Smith* v. *Ellis*, 29 Maine, 422; *Mattison* v. *Marks*, 31 Mich. 421; *Lamb* v. *Story*, 45 Mich. 488; *Helmer* v. *Krolick*, 36 Mich. 373; *Jordan* v. *Tate*, 19 Ohio, N. S. 586; *Charlton* v. *Reed*, 61 Iowa, 166; *Curtis* v. *Horn*, 58 N. H. 504, and cases; 1 Daniel Neg. Ins. §§ 43, 44, 45, 45 a; *Bates* v. *Le Clair*, 49 Vt. 229; *Ernst* v. *Steckman*, 74 Penn. St. 13; *Capron* v. *Capron*, 44 Vt. 410; *Cisne* v. *Chidester*, 85 Ill. 523; *First National Bank* v. *Skeen*, 101 Mo. 683; *Albertson* v. *Laughlin*, 173 Penn. St. 525; *Palmer* v. *Hummer*, 10 Kansas, 464; *Buchanan* v. *Wren*, (Tex.) 14 S. W. Rep. 732.   Contra: *Richards* v. *Barlow*, 140 Mass. 218, and cases. But see Act of 1888, c. 329.

A stipulation for attorney's fees in a promissory note does not destroy its negotiability: *Stoneman* v. *Pyle*, 35 Ind. 103; *Hubbard* v. *Harrison*, 38 Ind. 323; *Sinker* v. *Fletcher*, 61 Ind. 276; *Garver* v. *Pontius*, 66 Ind. 191; *Maxwell* v. *Morehart*, 66 Ind. 301; *Proctor* v. *Baldwin*, 82 Ind. 370; *Farmers' Nat. Bank* v. *Sutton Mfg. Co.*, 52 Fed. Rep. 191.

Counsel also cited:—1 Daniel Neg. Ins. § 62 a; 1 Randolph Com. Paper, 205; *Sperry* v. *Horr*, 32 Iowa, 184; *Hurd* v. *Dubuque*, 28 Neb. 10; *Dietrech* v. *Bayhi*, 23 La. Ann. 767; *Seaton* v. *Scoville*, 18 Kan. 435; *Overton* v. *Matthews*, 35 Ark. 147; *Gaar* v. *Bank*, 11 Bush, 180; *Nickerson* v. *Sheldon*, 33 Ind. 372; *Trader* v. *Chidester*, 41 Ark. 242; *Davidson* v. *Norse*, 52 Iowa, 384; *Merchant* v. *Moreno*, 7 Fed. Rep. 806; *Adams* v. *Addington*, 16 Fed. Rep. 89.

*E. Woodman and T. L. Talbot*, for defendant.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

STROUT, J.   This case comes before us upon demurrer to the declaration, and an agreed statement of facts, upon which the court is to render "such final judgment as law and justice will require." The consideration of the demurrer, under this submission, becomes unimportant.

The plaintiff claims to recover from the estate of James Webb,

the defendant's intestate, as indorser of two notes for eleven hundred dollars each, both dated September 29, 1892, now held by plaintiff.  The first reads as follows:—

"$1,100.00.                              Muncie, Ind. Sept. 29, 1892.

On or before one year after date we promise to pay to the order of James Webb eleven hundred dollars with six per cent interest per annum from date and attorney's fees.  Value received without any relief whatever from valuation and appraisement laws.  The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and non-payment of this note.  Negotiable and payable at the Citizens' National Bank of Muncie, Indiana.  With eight per cent interest after maturity until paid.

U. S. Gerrells
W. H. Masters."

The second note is of precisely the same tenor, except payable on or before two years.

On the back of each note is the following:—

" For value received I, James Webb, hereby assign, transfer and deliver unto Hardin Roads of Muncie, Indiana, or his order, all my right, title and interest in and to the within note, and the mortgage securing the same.

James Webb."

Both notes were secured by mortgage upon real estate in Muncie, sold by Webb to Gerrells and Masters, through one W. L. Lyons, a real estate and insurance broker at Muncie.  This sale was for thirty-three hundred dollars, one-third of which was paid in cash, and the remaining two-thirds by the two notes sued, secured by a mortgage of the same real estate.  Soon after the notes were received by Webb, he employed Lyons "to sell the same, and within a few months thereafter negotiated a sale of the notes and the mortgage securing the same, through said Lyons to Hardin Roads of said Muncie, the plaintiff, for the sum of two thousand dollars."  During the entire transaction, Webb was a resident and citizen of Maine, and Lyons and Roads were at Muncie, and residents of Indiana.  The writing upon the back of the notes was

placed there by Webb, in Maine, as also the written assignment of the mortgage. "Both mortgage and notes were then forwarded by mail by Webb to Lyons, who received payment therefor from the plaintiff at said Muncie, and remitted the same to Webb at Bridgton, Maine."

The papers being delivered to Roads and payment received at Muncie, the contract must be regarded as made in Indiana. The notes were not paid by the makers, and the plaintiff realized on sale of the mortgaged estate six hundred dollars, and claims the balance in this suit.

It is objected that the relation of indorser and indorsee does not exist between the parties, because the notes were not negotiable, by the law merchant; and that the plaintiff is but an assignee of a non-negotiable chose in action, and cannot maintain this suit against Webb's estate.

In Indiana, the negotiability of notes depends upon a statute which provides that "notes payable to order, or bearer, in a bank in this state shall be negotiable as inland bills of exchange and the payee and indorsee thereof may recover as in case of such bills." R. S., 1881, § 5506. Under this statute the Indiana court holds that all notes payable to order, or bearer, in a bank in that state, are, if in other respects they comply with the requirements of the law merchant, negotiable under the law merchant. *Melton* v. *Gibson*, 97 Ind. 158. In *Pool* v. *Anderson*, 116 Ind. 92, it is said that "so far as the statute places promissory notes upon the footing of inland bills of exchange, it subjects them to the law merchant, and all its incidents."

A valid promissory note is not necessarily negotiable. To make it such by the law merchant, it must run to order or bearer, be payable in money, for a certain, definite sum, on demand, at sight, or in a certain time, or upon the happening of an event which must occur, and payable absolutely and not upon a contingency.

These notes were payable "on or before" a named date, and were for a definite sum of money, with interest "and attorney's fees." The later cases in Massachusetts hold that when the time of payment is on or before a certain date, the time of payment is

thereby made uncertain, and for that reason such a note is not negotiable. *Hubbard* v. *Mosely,* 11 Gray, 170 ; *Way* v. *Smith,* 111 Mass. 523.    These cases have been since followed in that jurisdiction, though the earlier case of *Cota* v. *Buck,* 7 Met. 588, held differently.    But in other jurisdictions it has been held that these words reserved an option only to the maker to pay before maturity, that payment could not be required till the time specified, nor the note dishonored till then ; and therefore it was, in contemplation of the law merchant, payable at a time certain.    *Bates* v. *Le Clair,* 49 Vt. 229 ; *Ernst* v. *Steckman,* 74 Pa. St. 13 (15 Am. Rep. 542); *Albertson* v. *Laughlin,* 173 Pa. St. 525, (51 Am. St. Rep. 777); *First Nat. Bank of Springfield* v. *Skeen,* 101 Mo. 683 ; *Palmer* v. *Hummer,* 10 Kansas, 464, (15 Am. Rep. 353); *Curtis* v. *Horn,* 58 N. H. 504 ; *Cisne* v. *Chidester,* 85 Ill. 523 ; *Woollen* v. *Ulrich,* 64 Ind. 120.    The question has not been decided in this State, and we do not now decide it.

A more formidable objection is in the provision for the payment of "attorneys' fees. "    It is said that if the note should be paid at maturity there would be no attorneys' fees.    This is true.    But a note which, by its terms, is negotiable under the rules of law, does not lose that characteristic until merged in a judgment.    The only infirmity, attending its negotiation after maturity, is that the indorser takes it subject to the same defense that the maker could have made against the original payee.    A note cannot be negotiable before maturity and not negotiable after that, by reason of the terms of the note itself.    After these notes were dishonored and had been placed in an attorney's hands, his fees commenced to run.    How much they would amount to depended upon the service then rendered and to be rendered.    But until merged in judgment, they were still negotiable, if negotiable at any time after their creation.    Hence arose an uncertainty in the amount due.    That uncertainty attached to the notes in their inception, although attorney's fees would not accrue until after dishonor.    The notes provided for the payment of such uncertain fees, in case they should accrue, and thus rendered the amount the makers were liable to pay in one event, uncertain.    This infirmity destroyed

the negotiable quality of the notes. *Altman* v. *Rittershofer*, 68 Mich. 287, (13 Am. St. Rep. 341.) It has been held in this state that a note payable to order for a sum certain and another sum which is contingent, is not negotiable. *Dodge* v. *Emerson*, 34 Maine, 96. So a note to an insurance company, or order, for a certain sum "and such additional premiums as may become due" on a policy named, is not negotiable. *Marrett* v. *Equitable Insurrance Company*, 54 Maine, 537. In that case the additional premiums would be definite, when required; while in the case at bar, the amount of the attorney's fees remains an uncertain quantity until the note should be finally paid. See also *Lime Rock F. & M. Ins. Co.* v. *Hewett*, 60 Maine, 407. These notes fail to contain such definite amount to be paid, as is required by the law merchant, to render them negotiable. It is so held in many states. In *Woods* v. *North*, 84 Pa. St. 409, (24 Am. Rep. 201,) the note was for a specified sum "and five per cent collection fee if not paid when due." The court held it not negotiable. So held in Missouri, *First Nat. Bank of Trenton* v. *Gay*, 63 Mo. 33, (21 Am. Rep. 430); and in Wisconsin, *Morgan* v. *Edwards*, 53 Wis. 599, (40 Am. Rep. 781); in Michigan, *Altman* v. *Rittershofer*, supra; in Minnesota, *Jones* v. *Radatz*, 27 Minn. 240; in Maryland, *Maryland Fertilizing, etc., Co.* v. *Newman*, 60 Md. 584, (45 Am. Rep. 750); in California, *Kendall* v. *Parker*, 103 Cal. 319; in North Carolina, *Bank* v. *Bynum*, 83 N. Carolina, 24, (37 Am. Rep. 604); and in South Carolina, *Carroll County Savings Bank* v. *Strother*, 28 So. Carolina, 504.

It is held otherwise in Indiana, *Stoneman* v. *Pyle*, 35 Ind. 103, (9 Am. Rep. 639,) and in some other states.

It is urged that because this is an Indiana contract, we must apply the doctrine of the Indiana court to it. We do not so understand the law. It is true that the lex loci contractus governs as to the validity and construction of the contract. But the lex fori governs as to all matters pertaining to the remedy. That law governs as to the negotiability of the contract, because upon it depends the question who has a right of action. *Pearsall* v. *Dwight*, 2 Mass. 90. See also *McRae* v. *Mattoon*, 10 Pick. 53;

*Warren* v. *Copelin*, 4 Met. 597; *Foss* v. *Nutting*, 14 Gray, 485; *Leach* v. *Greene*, 116 Mass. 534.

But if this were not so, yet where the general principles of commercial law are to be applied to a contract, the court of the forum will apply those principles according to its judgment, notwithstanding it may have been held differently where the contract was made.

The Supreme Court of the United States, under the judiciary act of 1789, re-enacted in the Revised Statutes, which provides " that the laws of the several states, except where the constitution and treaties of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply," has uniformly held that it was bound by the decisions of the State court which furnished rules of property, or construed a state statute; yet it was said by that court in *Chicago* v. *Robbins*, 2 Black, 428, that " where private rights are to be determined by the application of common law rules alone, this court, although entertaining for State tribunals the highest respect, does not feel bound by their decisions." That court has ever since adhered to that doctrine. *Norton* v. *Shelby County*, 118 U. S. 440; *Gormley* v. *Clark*, 134 U. S. 348; *Stutsman County* v. *Wallace*, 142 U. S. 306; *Township of Pine Grove* v. *Talcott*, 19 Wall. 677; *Scudder* v. *Union Nat. Bank*, 91 U. S. 412; *Pritchard* v. *Norton*, 106 U. S. 130. It has been so held in Massachusetts, *Richards* v. *Barlow*, 140 Mass. 220; and in Iowa, *National Bank of Michigan* v. *Green*, 33 Iowa, 146.

The statute of Indiana places notes payable in bank, upon the footing of inland bills of exchange. To them the law merchant, with all its incidents, is to be applied. So held in Indiana, in *Pool* v. *Anderson*, supra. The law merchant, by adoption, and the statute of 3 and 4 Anne, c. 9, are part of our common law, which regulate and control the vast transactions in commercial paper. In that domain, we apply the law to subjects affected by it, which are litigated here, having great respect for the decisions of other tribunals, but not controlled by them.

We hold these notes not negotiable. Plaintiff therefore cannot maintain this action.

Another defense is interposed which must prevail, even if it should be conceded that these notes were negotiable under the law merchant. Where a note, negotiable on its face, is indorsed in blank by the payee, the law implies an agreement by the payee, in case the note is not paid at maturity, on proper demand and notice, that the indorser will pay it to the holder. But this implied contract is only prima facie. It may be rebutted. In a suit by the indorsee against the indorser, the latter may show that the understanding and agreement between the parties was that the indorser should not be holden. The law does not imply a contract where an express one has been made. He may prove the express contract by parol evidence, or it may satisfactorily appear from the transaction itself. *Patten* v. *Pearson,* 55 Maine, 39; *Smith* v. *Morrill,* 54 Maine, 52; *Patten* v. *Pearson,* 57 Maine, 431; *Pool* v. *Anderson,* 116 Ind. 92. A note may be sold, as other goods and effects are. In such cases there is no implied warranty of the solvency of the maker. The law respecting the sale of goods is applicable. *Milliken* v. *Chapman,* 75 Maine, 317; *Bicknall* v. *Waterman,* 5 R. I. 43; *Beckwith* v. *Farnam,* 5 R. I. 250. See *Hussey* v. *Sibley,* 66 Maine, 196. If the paper is payable to bearer, it may be sold and transferred by delivery; but if payable to order, it must be indorsed to enable the holder to pursue his remedy in his own name. The usual way to indorse, in such case, is without recourse. But even if indorsed in blank, where the law implies the ordinary liability of an indorser, it is still an open question between the parties to the transaction, whether the actual contract was a sale, the purchaser relying upon the responsibility of the maker alone, or otherwise.

Applying this principle to the facts of this case, it is apparent that the transaction between Webb and the plaintiff was a sale of these notes, by which the purchaser took the notes relying solely upon the responsibility of the makers, and the security of the mortgage, with no claim against Webb as indorser.

Webb was a resident of Maine. The sale of the land to

Gerrells and Masters was effected by a broker in Muncie. It does not appear that Webb had any knowledge of the purchasers or their responsibility. Presumably he did not. He apparently wanted not only to sell the land in the first place, but to relieve himself of all trouble thereafter in connection with it. Shortly after the receipt of these notes, Webb employed the same broker who effected the sale to Gerrells and Masters "to sell the same," in the language of the agreed statement; and within a few months thereafter Lyons "negotiated a sale of the notes and mortgage" to plaintiff. To effectuate the sale, Webb, a business man and presumably familiar with the method of negotiating commercial paper, instead of indorsing the notes in blank, wrote thereon an assignment of his right, title and interest, and made an assignment of the mortgage in substantially the same language employed in the assignment of the notes. He sold them for two thousand dollars, when there was due upon them twenty-two hundred dollars and interest from September 29, 1892, to the time of sale. One note became due September 29, 1893, and the other in September, 1894. The notes were not paid; but the plaintiff does not appear to have called upon Webb as indorser, during his life, which ended November 11, 1895, nor upon his administratrix till October 14, 1896, when the first notice of non-payment was given. Meantime, plaintiff had sold the mortgaged property on August 3, 1895, for six hundred dollars, being himself the purchaser; and on July 8, 1895, had obtained a personal judgment against Masters for the amount of the notes, but collected nothing. Even if the waiver of demand and notice in the body of the notes bound the indorser, this delay on the part of the plaintiff is inexplicable, if he thought Webb liable as indorser. Upon all these facts, a jury would be justified in finding, that the transaction between Webb and the plaintiff was a sale of the notes and mortgage as commodities, for what they were supposed to be worth, the purchaser relying solely upon the responsibility of the makers and the mortgage, with the understanding that Webb was under no liability as indorser. The acts of the plaintiff are inconsistent with any other view. Besides, if Webb desired to obtain money upon the notes, by discount in

the usual way, he assuming the ordinary liability of an indorser, he could readily have done so in his home state. He need not have suffered a loss of more than two hundred dollars in the transaction. He evidently understood that he had sold the notes, and was under no further liability. The language of the transfer of the notes so implies. Its terms are express, and exclude any implied contract differing from it. We think the plaintiff so understood it, from the nature of the transaction, and his long delay in making claim, after dishonor of the notes and failure to collect of the makers, or to realize payment from the mortgage security.

As this case is submitted upon agreed facts, for the judgment of this court, we are at liberty to draw such inferences from them, as a jury would be authorized to draw. And doing so, we arrive at the conclusion, that the understanding between Webb and the plaintiff was, that Webb should not be liable as indorser, but that the plaintiff purchased the notes and mortgage, relying solely upon the responsibility of the makers and the mortgage security. He cannot now call upon Webb's estate to make good any loss he may have sustained. *Patten* v. *Pearson*, 57 Maine, 431, 432.

*Judgment for defendant.*