BANK OF HOUSTON, Appellant, v. JOHN R. DAY et al., Respondents.

St. Louis Court of Appeals, November 16, 1909.

1. **BILLS AND NOTES: Law Merchant: Negotiable Instrument Law: Undated Promissory Note.** An undated promissory note may be a valid instrument, under either the law merchant or the Negotiable Instrument Law.

2. ———: ———: **Authority to Fill in Blanks.** The holder of a note, signed in blank and delivered to another for the purpose of negotiation, has implied authority, under the law merchant, to fill in such blanks as are essential to make it a complete instrument for the purpose intended.

3. ———: ———: ———: **Improper Date Filled In: Bona Fide Holder.** Where an undated note is issued and an improper date is inserted therein by the payee and it is thereafter negotiated to an innocent third party, such party may enforce the same, notwithstanding the improper date.

4. ———: ———: ———: **True Date to be Filled In.** The original payee or subsequent holder with notice has implied authority to fill in the true date only, in an undated promissory note, or such date as was directed or contemplated by the parties.

5. ———: Negotiable Instrument Law: Ante or Post-dated Promissory Notes: Mutual Agreement. Section 12 of the Negotiable Instrument Law (Laws 1905, p. 244), which provides that an instrument is not invalid for the reason only it is ante or post-dated contemplates instruments which are ante or post-dated in accordance with a mutual agreement between the parties to that effect,

6. ———: ———: Insertion of Wrong Date in Undated Promissory Note. Section 13 of the Negotiable Instrument Law (Laws 1905, p. 244), which provides that the insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course, implies that the insertion of a wrong date in an undated instrument by one having knowledge of the true date of issue would avoid the instrument.

7. ———: ———: ———: Holder in Due Course: Good Faith Essential. For one to be the "holder of commercial paper in due course" under section 13 of the Negotiable Instrument Law good faith with respect to the same is essential; and where the holder of an undated promissory note, with knowledge of the true date of issue, inserts an untrue date, he is not a "subsequent holder in due course" within the meaning of the statutes.

8. ———: ———: Authority to Fill in Date: True Date to be Filled In. The thought runs throughout the various sections of the Negotiable Instrument Law that the true date of issue of an undated instrument is the date which controls and is the date which, under the provisions of section 13 of that act (Laws 1905, p. 244), any party holding such instrument is authorized to insert.

9. ———: Undated Promissory Note: Post Dating: Effect on Endorser's Obligation. Where an undated note, payable four months after date, was delivered to the holder on December 1, 1905, in payment of a note executed by the same parties, which matured August 30, 1905, and the agent of the endorsers of said note, at the time of its delivery, told the agent of the holder that the endorsers would not lend their credit for a further extension of the debt, but the agent of the holder nevertheless inserted December 30, 1905 as the date of said note, said note was void as to said endorsers, for the reason the statement of endorsers' agent was a direction to the effect they would not extend their credit for a period beyond four months after December 1, without the holder demanding payment from the makers at the expiration of that period.

Appeal from the Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Lamar & Lamar* and *W. E. Barton* for appellant.

Declarations of law, number one and two, for plaintiff, given by the court of its own motion, are not law, and should not have been given. A holder, in due course, of commercial papers, blank as to date, may fill in the blank with any day, and has implied authority of both maker and indorser to fill the blank with any date. Story on Prom. Note (7 Ed.), sec. 10 and note on p. 19; Bunker on New Neg. Inst. Law, sec. 14, 15, 16 and notes; Bank v. Nichol, 34 Mo. App. 259; 2d Cyc., p. 163, sec. 4; 7 Current Law, p. 116, and note 38; Davidson v. Lanier, 71 U. S. 447 (18 Law Ed. 377); Schooler v. Tilden, 71 Mo. 580; Roe v. Ins. Co., 78 Mo. App. 452; Ivory v. Michael, 33 Mo. 398; 7 Cyc., pp. 619, 620, 621; Bank v. Sargent (Me.), 35 Am. St. Rep. 376; Manhattan Sav. Ins. v. Bank (N. Y.), 88 Am. Rep. 640; Note to Burges v. Black, 86 Am. St. Rep. 107, sec. 9; Hepler v. Bank (Penn.), 39 Am. Rep. 813; Mitchell v. Culver, 7 Cowen, 336; Snider v. Vandorn (Wis.), 32 Am. Rep. 739.

*Dooley & Salyer* for respondents.

(1) Respondents contend that no error prejudicial to the rights of appellant was committed by the court, either in the reception or rejection of evidence, or in the giving or refusals of declarations of law. The rule is, that a note delivered in due course, undated, the holder has implied authority to give the note the "proper date," "the true date," "the date contemplated by the makers." Mackey v. Basil, 50 Mo. App. 190; Am. and Eng. Ency. Law (2 Ed.), p. 253, 255; Neg. Inst. Law, sec. 13. (2) The fact that a blank has been filled in a manner other than that contemplated is a defense against the one so filling it, or against one taking the instrument with knowledge thereof. Joyce "On Defenses

to Commercial Paper," sec. 22; Luellen v. Hare, 32 Ind. 211; Snyder v. VanDosen, 46 Wis. 602; 32 Am. Rep. 739; Neg. Inst. Law, secs. 124, 125.   (3)   That appellant bank by accepting the second installment of interest from Keel & Hoover, and agreeing with Keel & Hoover to renew the note four months from December 30, 1905, was binding upon the appellant bank, and was a postponement of the bank's right to enforce the collection of the note, and being done without the assent of the endorsers, the endorsers were thereby discharged. Neg. Inst. Law, sec. 120.   (4)   That by dating the note December 30, 1905, making same mature four months thereafter, was a material alteration of said note, and such being done without the assent of the endorsers, respondents were thereby discharged and the note avoided as to them. Neg. Inst. Law, secs. 124, 125.

NORTONI, J.—This is a suit on a promissory note against the defendants, who were accommodation indorsers thereon. The finding and judgment were for the defendants and the plaintiff prosecutes the appeal.

It appears that Keel & Hoover, the makers of the note, were partners doing business under the firm name of Keel & Hoover. About April 27, 1905, Keel & Hoover executed their promissory note to one J. R. Day for the sum of $550, payable four months after date with interest from maturity, at the rate of eight per cent per annum. This note was indorsed by the payee, J. R. Day, and by J. T. Chilton, C. H. Baumgardner, J. C. McCaskill, Levi McCaskill and Jack McCaskill for the accommodation of the makers, Keel & Hoover. Being so indorsed, it was negotiated to the plaintiff Bank of Houston. The discount thereon was paid in advance for the four months' period specified in the note.

The note fell due on August 30, 1905, and the makers, Keel & Hoover, not being prepared to pay the same, forwarded to the Bank of Houston their check for $14.65 to cover the discount on the amount

of $550 for an additional four months' period.   They also executed a new note, that is, the note in suit, payable four months after date, to the order of J. R. Day for the sum of $550, and requested Mr. Day to procure the indorsement of the several other parties as accommodation indorsers.   J. R. Day, the payee, himself indorsed the note and devoted something near three months' time in procuring the indorsements of the several other parties.

The same persons as before indorsed this second note at the request of Day for the accommodation of the makers.   The names indorsed on the back thereof besides J. R. Day are J. T. Chilton, C. H. Baumgardner, J. C. McCaskill, Levi McCaskill and Jack McCaskill.   This note was filled out properly in every respect other than the date thereof which was blank; that is, a blank for the day and month were unfilled. The cashier of the plaintiff bank afterwards inserted the date December 30 therein, and so dated, the note in suit is in the following form:

"Houston, Missouri, Dec. 30, 1905.

"Four months after date, for value received, we promise to pay to the order of J. R. Day, $550, Five Hundred and Fifty 00-100 Dollars, at the Bank of Houston with interest from maturity at the rate of eight per cent per annum.

"KEEL & HOOVER,
"By V. M. Keel."

The note is indorsed as follows, on the back:

| "J. R. Day, | J. T. Chilton, |
| C. H. Baumgardner, | J. C. McCaskill, |
| Levi McCaskill, | Jack McCaskill." |

All of the parties having signed or indorsed the note, the same was intrusted to Jack McCaskill, one of the indorsers thereon, for the purpose of negotiation to the plaintiff bank in liquidation of the prior note dated April 27, 1905, executed by the identical parties.

Jack McCaskill delivered the note to the plaintiff bank about the first of December, 1905, without any date of execution mentioned therein, that is to say, with the date line blank. Jack McCaskill gave testimony to the effect that at the time he delivered the note in suit to the plaintiff bank he instructed Mr. Davidson, the cashier, to insert the date August 30, 1905, that is, to date the present note on the date on which the prior note fell due, and further to notify Keel & Hoover, the makers, who resided in the Indian Territory, that the other accommodation indorsers and himself would decline to lend their credit to any further renewal thereof in the future, and that the makers would be expected to pay the note at maturity. Mr. Davidson, the cashier of the plaintiff bank, gave testimony to the effect that Jack McCaskill, upon delivering the note to him, about December 1st, said he and the other indorsers would decline to indorse for the makers again and that when the note matured the bank should call on the makers for payment, but he insisted that McCaskill gave no instructions whatever touching the matter of the date to be inserted in the note; that is to say, that he delivered the note to him as cashier of the bank with the date line blank and without any instructions whatever as to what date should be inserted therein.

It will be remembered that about August 30, 1905, when the first note fell due, Keel & Hoover, the makers thereof, had paid to the plaintiff bank $14.65 as discount on the amount involved for the period of an additional four months. This being true, the discount was paid until December 30, 1905, or about one month after the note, which is the subject of the present controversy, was delivered to the bank; that is to say, about three months of the discount theretofore paid on August 30th had been earned prior to the delivery of the note in suit to the bank on December 1, 1905.

This being the state of the case at the time the

bank received the undated note in suit, the cashier of
the bank, Mr. Davidson, wrote the makers, Keel &
Hoover, in the Indian Territory as the discount there-
tofore paid was practically earned before the present
note had been negotiated, it would be well for them to
send the bank an additional remittance to cover the
discount for four months in the future; that is, for the
period of four months after December 30, 1905, on
which date the prior discount period would expire.
Keel & Hoover complied with this request and remitted
to the plaintiff bank their check for $14.65 to cover the
discount on the amount of money involved for an ad-
ditional four months; that is to say, to cover the dis-
count from December 30, 1905, to April 30, 1906.

Upon receiving this second remittance from Keel
& Hoover, the cashier of the plaintiff bank, Mr. David-
son, inserted the date December 30 in the blank space
on the date line of the note which had been delivered
to him by McCaskill, about the first of December. As
thus dated, the note would fall due about April 30, 1906,
and concurrent with the period for which discount had
been paid by the last remittance from the makers. It
is conceded throughout the case that the date December
30 was inserted in the note by the cashier without any
express authority whatever from either the makers or
the indorsers thereon. And if the testimony of Jack
McCaskill is to be believed, it was inserted contrary to
his instructions on delivery of the note to the bank.
McCaskill testified that he instructed the cashier at the
time of delivering the note to insert the date August 30,
1905. Be this as it may, the plaintiff bank does not
rely upon any express authority from any one to date
the note December 30, 1905, but, on the contrary, relies
upon the fact that the note was undated and that there
was a blank left therein for date at the time of its de-
livery and the implied authority which, in the absence
of express instructions, is assured by the law to the
holder of a note, to fill in such blanks as are necessary

to either make the obligation complete or render it an appropriate instrument as commercial paper.

In this connection, it will be remembered that the cashier, Mr. Davidson, testified that no express directions whatever were given by McCaskill as to when the note should be dated. The accommodation indorsers only defended the action and the finding and judgment of the court were for them to the effect that in the absence of directions from McCaskill who delivered the note to the cashier of the bank, or an agreement of some kind to that effect, the cashier was without authority to post-date the note December 30, 1905; in other words, the instructions go to the effect that in the absence of a direction from or agreement with McCaskill, who delivered the note to the bank, which might be regarded as express authority therefor, there is no authority implied by law authorizing the cashier to post-date the note December 30, 1905. The question, therefore, presented for decision is the soundness of the proposition of law announced in these instructions.

The defendant invokes section 13 and other provisions of our Negotiable Instrument Law, approved April 10, 1905. [See Laws of Missouri, 1905, page 243, in support of the instructions.] It is provided, substantially, in section 13 of the act referred to that where an instrument expressed to be payable at a fixed period after date is issued undated, any holder may insert therein the true date of issue and the same shall be payable accordingly. A further provision of that section is to the effect that the insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course, but as to him, the date so inserted is to be regarded as the true date. Now, it is argued by the defendant on this section that the holder of an undated instrument is authorized only to insert the true date of issue thereon, and that while it is not so provided in express terms, it is at least im-

plied that, although the insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course, it does avoid it in the hands of the holder who inserts a date other than the true date and is thus possessed of full knowledge of the fact that the date is not the true one.

Section 196 of our new Negotiable Instrument Law provides that for any case not provided for in this act the rules of the law merchant shall govern. In view of this provision, it is argued by the plaintiff that section 13, referred to, does not expressly inhibit the insertion of a date other than the true one and that, therefore, we are remitted to the principles of the law merchant for a rule to ascertain and determine the controversy. In this connection, it is argued that parties often loan their mercantile credit to others by signing their names to blank papers to be afterwards filed as bills of exchange or promissory notes written over their signatures as drawers or makers or by signing their names in the appropriate manner to indicate that they desire to bind themselves as acceptors or indorsers of the instrument which it is contemplated to complete upon such blank papers. And it is a settled principle of the commercial law that when such instruments are afterwards completed by the holder of such blanks to whom they are loaned, such parties become as absolutely bound as if they had signed them after their terms were written out and further that the presence of their names upon blanks purports an authority granted to the holder to fill them for any sum and for any terms as to time, place and conditions of payment. Indeed, in his admirable work on Negotiable Instruments (5 Ed.), section 143, Mr. Daniels says:

"The authority implied by a signature to a blank, and the credit granted, are so extensive, that the party so signing will be bound to a bona fide transferee in due course, though the holder was only authorized to use it for one purpose, and has perverted it to another,

though authorized to be filled for a certain amount and a greater is inserted; and though the authority was limited to time which has expired, or was only to be exercised upon a condition which has not happened."

It will be observed, however, that the doctrine thus stated by the learned author relates more particularly to a bona fide transferee in due course. Now, a promissory note may be a valid instrument either under the law merchant or under the Negotiable Instrument Law even though it is undated. [2 Am. and Eng. Ency. Law (2 Ed.), 255 and sec. 6, Negotiable Instrument Law of April 10, 1895.] It is true there is an implied authority under the law merchant in the holder of a note signed in blank and delivered to another, for the purpose of negotiation, to fill in such blanks as are essential to make it a complete instrument for the purpose intended. [National Bank of Paris v. Nickell, 34 Mo. App. 295; Daniels, Negotiable Instruments (5 Ed.), 144; Schooler v. Tilden, 71 Mo. 580; Ivory v. Michael, 33 Mo. 398; 2 Am. and Eng. Ency. Law (2 Ed.), 255 et seq.]

It not being essential to the validity of a promissory note that it shall express a date (that is, although a promissory note undated may nevertheless purport a valid obligation, the date of which may be inquired into and ascertained) we believe the implied authority touching the date may not be so broad and comprehensive as that pertaining to such blanks therein as are essential to rendering the instrument a complete obligation. Whatever authority there is in the law merchant for filling in the date of a note, we believe, rests more particularly upon the fact that it is essential to the free and uninterrupted negotiability of the instrument that it should be dated, and upon the presumption that all parties to a note intended for circulation obviously consented that a proper person to whom the same was intrusted for the purpose of raising money

might fill the same with the proper date.  [2 Am. and
Eng. Ency. Law (2 Ed.), and cases cited.]

Now, there is no doubt where a note is issued with-
out a date and an improper date is inserted therein by
the payee and the note is thereafter negotiated to an
innocent party or bona fide holder without notice, that
such bona fide holder may enforce the same notwith-
standing the improper date.  This follows for the rea-
son that one who signs such an instrument furnishes
the means of fraud and is estopped to deny his liability
thereon.  [Mitchell v. Culver, 7 Cowen (N. Y.) 336;
Frank v. Lilienfeld, 33 Gratt. (Va.) 377; Redlich v.
Doll, 54 N. Y. 234; Joyce Defenses to Commercial
Paper, sec. 22; Daniels Negotiable Instruments (5
Ed.), sec. 143; Androscoggin Bank v. Kimball, 10 Cush.
(Mass.) 373.]

Be this as it may, the date of a negotiable instru-
ment is important in many respects.  Although it may
be valid and enforceable without an expressed date, it
is nevertheless an inconvenient instrument in the com-
mercial world if undated and likely to produce much
confusion and evil results.  It would indeed be difficult
to ascertain and determine the rights of the parties to
an undated instrument in circulation expressing an
obligation payable four months or six months after the
date thereof.  If no date appears, how is the bona fide
innocent holder without knowledge of the date of issue
to determine when the obligation is due and notice of
dishonor should be given?  These considerations would
obviously authorize the payee or other proper person
to insert the proper date as between the immediate par-
ties.  However, many reasons suggest themselves why
the payee ought not to be allowed, as between himself
and the makers and indorsers, to insert an improper
date, for by so doing, he might materially increase the
obligation to be paid.  For instance, if a four months'
note is issued, as was the one in suit, on the first of
December, 1905, by ante-dating it December 1, 1904,

the payee could, according to its face, increase the obligation a full year's interest and at the same time render the note eight months past due at the time it was issued. On the other hand, if the payee is allowed to accept a note on the first of December, 1905, signed by several parties, as was this one, and postdate it to December 30, 1905, it may be that the makers and each of the indorsers thereof would die during the interim between the first of December and the 30th, the date of the note, and thus would be presented the anomaly of having a note dated the first of December, bearing the genuine signatures of several gentlemen who were dead. It is no doubt true that a note issued bearing the month of its issue and the year, with a blank for the day of the month, may be enforced by a subsequent holder, although the day of the month is filled in by him without express authority therefor. Such was the case of Page v. Morrel, 3 N. Y. App. Dec. 433. In such a case it is obvious that the subsequent holder filling in the day of the month is not aware of the particular day on which the note was issued, for he knew nothing of its issue. The paper having come into his hands for value in due course, bearing date the month of June and the year in which it was issued, in the absence of any knowledge whatever as to the date of issue, authority was implied to him to insert any date during the month mentioned. However, that authority is not in point here for the reason that in that case the subsequent bona fide holder of the note had no knowledge as to what was the true date of the instrument, "whereas, in the present controversy, the subsequent holder of the note, that is, the plaintiff bank, who, it may be said purchased it from Day, the payee —in fact an accommodation party only—knew the day and date of its issue; and indeed with such knowledge occupied the same position in respect of that matter as an original payee who knows the true date of issue. That is, the plaintiff bank knew that it acquired the

note about the first of December and not December 30th, for such was the date of issue under the facts in this case. Having this knowledge as between it and these accommodation indorsers, whom McCaskill represented when he delivered the note, it became the duty of the cashier of the bank to insert the date August 30, 1905, as instructed by McCaskill, if his testimony is to be believed. On the contrary, if no instructions whatever were given, then it became the duty of the bank to insert the true date of issue identically as though it were an original payee, Mr. Daniels says:

"Any holder has a right to insert the true date; and should he insert an improper date, the parties will still be bound to a bona fide holder for value and without notice of the impropriety."

Thus implying, of course, that the holder who has notice of the facts may not enforce a note when other than the true date has been inserted.

See Daniels Negotiable Instruments (5 Ed.), sec. 143. And we believe the following cases cited in the note support the text: Redlich v. Doll, 54 N. Y. 234 and 238; Frank v. Lillienfeld, 33 Gratt. (Va.) 377.; Overton v. Matthews, 35 Ark. 147 and 154; Page v. Morrel, 3 Abbott, App. Dec. N. Y. 433.

In the same section, Mr. Daniels also says that a party, having notice that other than the true date has been inserted cannot recover on the note unless he acquired it from one who took it bona fide without notice. This doctrine is supported by the case of Emmons v. Meeker, 55 Ind. 326. See also Goodman v. Simonds, 19 Mo. 107, 2 Cyc. 163; 2 Am. and Eng. Ency. Law (2 Ed.), 255. If it be true, as declared in the authority above cited, that a subsequent holder having notice of the fact that an improper date has been inserted by the original payee, cannot recover on the note, it is certainly true that although this plaintiff, a subsequent holder of the note from Day, the payee, may not recover against these indorsers after having actually itself with full

knowledge of the date of issue dated the note otherwise than in accordance with the true date. The case is distinguishable from some in the books inasmuch as the element of good faith does not obtain in favor of the subsequent holder here as it does in some other cases, for the reason that in the particular instance now in judgment, the present holder actually knew the date of issue and instead of acting upon the implied authority to insert the true date, if, as the cashier said, no instructions were given by McCaskill to ante-date the note to August 30, inserted a date which was untrue in every respect. When the matter is examined on principle touching the rights of these indorsers, it must be remembered that if the note were not paid when due, they were entitled to notice of dishonor—at any rate when the note fell due, four months after the date of issue which was December 1, 1905—whereas, as the note was dated by the cashier, their rights were infringed upon in this respect so that instead of being entitled to notice of dishonor in the even of non-payment about April 1, 1906, they did not receive such notice until thirty days thereafter, in accordance with the tenor of the note bearing a false date.

After much careful reading and reflection on the subject, we believe, as a general rule, between the original parties to the instrument or subsequent holder with notice, the original payee of such subsequent holder with notice has implied authority by virtue of the blank contained in the note only to fill in the true date or such a date as was directed or contemplated by the parties. [Daniels Negotiable Instruments (5 Ed.), sec. 143a and 144, 2 Cyc. 163 and 164; 2 Am. and Eng. Ency. Law (2 Ed.), 255; Overton v. Matthews, 35 Ark. 146; Emmons v. Meeker, 55 Ind. 32.]

It is obvious that what has been said is in accord with the public policy of this State as declared in the new Negotiable Instrument Law approved April 10,

1905. See Laws of 1905. And the note in suit is in all respects subject to that enactment.

Section 6 of the act referred to declares that the validity of a negotiable instrument is not affected by the fact that it is not dated.

Section 12 declares that the instrument is not invalid for the reason only that it is ante-dated or post-dated "provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered, acquires the title thereto as of the date of delivery." This section seems to contemplate instruments which are ante-dated or post-dated by the parties in accordance with a mutual agreement to that effect, as is frequently done, and declares that they are not invalid because of such fact, provided no illegal or fraudulent purpose is intended. Section 13 of the act is as follows:

"Where an instrument expressed to be payable at a fixed period after date is issued undated, or where the acceptance of an instrument payable at a fixed period after sight is undated, any holder may insert therein the true date of issue or acceptance, and the instrument shall be payable accordingly. The insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course but as to him, the date so inserted is to be regarded as the true date."

It will be observed that this section authorizes the holder of an undated instrument to insert the true date of issue therein and makes the instrument payable accordingly. It provides, too, that the insertion of a wrong date does not avoid the instrument in the hands of a subsequent holder in due course and as to him the date so inserted is to be regarded as the true date. This is in affirmance of the doctrine which obtains in the law merchant and it implies, at least, that the insertion of a wrong date in an undated instrument by one having knowledge of the true date of issue would avoid the

instrument. Such we understand to be the settled doctrine of the cases hereinbefore cited, expounding the principles of the law merchant, that is, that such amounts to an alteration. [2 Am. and Eng. Ency. Law (2 Ed.), 142.]

Now, for one to be a holder of commercial paper in due course, the element of good faith with respect to the same is essential. [More v. Finger, 60 Pac. 933-935, 128 Cal. 313; Reese v. Bell, 71 Pac. 87-89, 138 Cal. 19.]

Therefore, the present plaintiff having inserted an untrue date in the instrument when it was possessed of knowledge of the true date of issue is not a subsequent holder in due course within the meaning of the statute. It is proper, too, to invite attention to section 17 of the negotiable instrument law. That section, in treating of the question as to when interest shall commence on undated instruments, provides that where the instrument is not dated, it will be considered to be dated as of the time it was issued. Section 19b defines the word "issue" to be the first delivery of the instrument, complete in form, to a person who takes it as a holder. It therefore appears that the note in suit was issued about the 1st of December, 1905, when it was delivered as a completed obligation in form to the plaintiff bank as the holder, for it was never delivered to Day, the original payee, he being an accommodation party only. It will be observed that the thought runs throughout the various sections of the negotiable instrument act to the effect that the true date of issue of an undated instrument is the date which controls and is the date which under the provisions of section 13 any party holding the same is authorized to insert.

Although we have thus given attention to the arguments presented in the briefs, the court is nevertheless of the opinion that the case was properly decided on the admitted facts. It will be recalled, Mr. Davidson, the plaintiff's cashier, admitted that Jack McCaskill

said when he delivered the note the indorsers would not lend their credit for a further extension of the debt. The cashier's testimony in that respect is as follows:

"Well, he did say that when the note matured that they would not sign for them any more; that they would have to call on them for payment."

The note on its face expressed an indebtedness due four months after date. This statement of McCaskill to the cashier regarding the intention and attitude of the indorsers was obviously a direction to the effect that the indorsers did not intend to lend their credit to a five months' obligation; that is, it amounted at least to a direction that they would not extend their credit for a period beyond four months after December 1st, without the bank demanding payment from the makers at the expiration of that period.

The judgment should be affirmed. It is so ordered. All concur.