HUBBARD *v.* FIRST STATE BANK OF BOURBON ET AL.

[No. 8,801. Filed December 19, 1916. Rehearing denied April 4, 1917. Transfer denied March 1, 1918.]

1. BILLS AND NOTES.—*Incomplete Note.—Negotiability.*—A note, incomplete by reason of the omission therefrom of the date of execution and the name of the payee, is not negotiable under the law merchant in Indiana. p. 57.

2. BILLS AND NOTES.—*Incomplete Note.—Negotiability.—Statutes.*— A note, incomplete by reason of the omission of the date of execution and the name of the payee, is negotiable under §§9071, 9072 Burns 1914, §§5501, 5502 R. S. 1881, so as to vest the property in an assignee or *bona fide* holder for value. p. 57.

3. BILLS AND NOTES.—*Bill of Exchange.—Action Against Drawer or Indorser.—Evidence.*—A *bona fide* holder for value of a purported bill of exchange, which does not show' to whom it is, payable, may maintain an action thereon against the persons who executed or indorsed it, and under appropriate averments may show by parol from whom the consideration moved, to whom the instrument was delivered by the maker or indorser, and who is in fact the owner and *bona fide* holder, and all facts attending the execution and transfer of the instrument. p. 58.

4. BILLS AND NOTES.—*Action on Incomplete Note.—Supplying Omissions.—Evidence.*—Though a note is incomplete by reason of the absence of the name of the payee and the date of execution, it may nevertheless support a valid obligation, and in a suit thereon, under allegations in the complaint that the omissions were by mutual mistake of the parties, the date of execution could be properly inquired into and ascertained from the evidence. p. 59.

5. BILLS AND NOTES.—*Actions on Incomplete Note.—Issues.—Evidence.*—In an action against the maker and indorser of a note from which the name of the payee and the date of execution had been omitted, where the complaint alleged that the omissions were by mistake of the parties and the scrivener and that the note was given to be used as collateral security, evidence showing the circumstances under which the note was signed, and the intention of the parties was admissible. p. 63.

6. BILLS AND NOTES.—*Negotiable Note.—Assignment.—Right to Sue.—Statutes.*—Under §§9071, 9072 Burns 1914, §§5501, 5502 R. S. 1881, providing that all promissory notes, bills of exchange, etc., signed by any person who promises to pay money, shall be negotiable by indorsement and that the assignee may recover in his own name, where one furnished the money intended to be raised by the use of an incomplete note, he obtained a definite interest in the note which he could assign to a bank for a valuable consideration, whereby it became the real party in interest and entitled to collect whatever was due upon the obligation. p. 64.

7. PLEDGES.—*Incomplete Promissory Note.—Use as Collateral Security.—Effect.*—In executing a promissory note, which was to be used as collateral security and which was incomplete by reason of the absence of the date of execution and the name of the payee, the maker authorized its use as collateral security for a loan of any amount obtainable for any period of time within the three years the note was to run before its maturity. p. 64.

8. PRINCIPAL AND SURETY.—*Accommodation Note.—Discharge of Surety.*—Where the continued use of a note as collateral security without an indorsement was fully within the intention of the parties and the plan originally adopted for raising the money to which a maker lent his name for the accommodation of a technical institute, the acceptance of the renewal note without the indorsement of the president of the institution did not in any way violate the maker's contract so as to discharge him from liability. pp. 64, 65.

9. PRINCIPAL AND SURETY.—*Departure from Contract.—Discharge of Surety.*—A surety is relieved from his contract by dealings or arrangements between his principal and the creditor, to which

he is not a party, and which constitute a departure from the contract which may possibly vary or enlarge his liability without his consent. p. 65.

From Marion Superior Court (88,900); *Charles Orbison,* Judge.

Action by the First State Bank of Bourbon, Indiana, against William H. Hubbard and James H. Matchett. From a judgment for plaintiff against both defendants, and for defendant Matchett on his cross-complaint against defendant Hubbard, Hubbard appeals. *Affirmed.*

*Daniel Wait Howe* and *George H. Batchelor,* for appellant.

*Frederick E. Matson, Edward E. Gates* and *James A. Ross,* for appellees.

FELT, C. J.—This is a suit on a note by appellee First State Bank against appellee Matchett and appellant Hubbard, in which the bank obtained judgment for $2,200 and costs against both defendants, and in which appellee Matchett obtained judgment on his cross-complaint against appellant, ordering the property of the latter levied upon and sold to satisfy the judgment before levying upon the property of the cross-complainant.

The complaint is in three paragraphs and there were numerous other pleadings in the case.

Appellant has assigned as error the overruling of his separate demurrer to each paragraph of the complaint; the sustaining of the separate demurrer of appellee, the First State Bank of Bourbon, Indiana, to the sixth, seventh and ninth paragraphs of appellant's answer to the first paragraph of complaint; the sustaining of said appellee's demurrer to the six-

teenth paragraph of answer to the third paragraph of complaint; error in each of the conclusions of law stated on the special finding of facts.

Omitting formal averments, the first paragraph of complaint alleges in substance that on March 1, 1909, the Winona Technical Institute and appellant Hubbard, by their promissory note, promised to pay to James H. Matchett, three years from that date, the sum of $2,000 with interest and attorney's fees, a copy of which note is made a part of the complaint as exhibit A; that before its maturity Matchett by indorsement on the note transferred and assigned the same to the First State Bank of Bourbon, Indiana, as follows, to wit: "For value received I hereby assign this note to First State Bank (signed) James H. Matchett." That appellant executed said note as surety by indorsing his name on the back thereof; that by reason of the mutual mistake of the parties and the scrivener who wrote the note, the date and name of the payee were left blank; that said note was delivered to said Matchett who was intended to be and in fact was the payee.

### "Exhibit A

"$2,000.00      Indianapolis, Ind., ........ 190..

"Three years after date, we promise to pay to the order of ................ two thousand dollars, with interest at ........ per cent. per annum from ................ until paid, and ten per cent. attorney's fees. Negotiable and payable at the Union National Bank, Indianapolis, Indiana. Value received without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive present-

ment, protest, and notice of protest and non-payment of this note.

"The Winona Technical Institute,
        "By S. C. Dickey, President.

"Due ...............
"Endorsements:
    Wm. H. Hubbard."

The gist of the second paragraph of complaint is that on February 20, 1909, the Winona Technical Institute borrowed from James H. Matchett, $2,000, and executed to him therefor its promissory note due in sixty days; that contemporaneously therewith, and to induce the loan of said money, the Winona Technical Institute and appellant Hubbard executed and delivered to said Matchett, as collateral security for said loan, a certain promissory note, particularly described, and being the identical note set out as exhibit A with the first paragraph of complaint; that said principal note for $2,000, due in sixty days, was renewed from time to time by the Winona Technical Institute, until on December 17, 1909, a final renewal note for $2,000, due in sixty days, was executed by it; that before the maturity thereof, and before the maturity of said collateral note, said Matchett for value received sold and assigned both of said notes to appellee First State Bank, and duly assigned said collateral note to it by indorsement on the back thereof as follows:

"For value received, I hereby assign this note to the First State Bank.
        "(Signed) James H. Matchett."

That thereafter the Winona Technical Institute became insolvent, and a receiver was appointed who

took charge of its property; that said First State Bank filed with the receiver its claim on the principal promissory note aforesaid, but no part of the same has been paid, and said company is insolvent and does not have assets sufficient to pay said debt or any part thereof; that by reason thereof, said collateral note so indorsed by appellant is due and unpaid.

The third paragraph of complaint is substantially the same as the second, except it is averred therein that the note sued upon was executed by appellant for the accommodation of the Winona Technical Institute to enable it to borrow money upon its own individual note by using said note of appellant as collateral security, and thereafter on February 20, 1909, it borrowed from James H. Matchett, on its individual note, $2,000, and gave the note in suit as collateral security therefor.

The memorandum accompanying the separate demurrer to each paragraph of the complaint alleged that neither paragraph states facts sufficient to constitute a cause of action against appellant, because: (1) The note sued on fails to show the date of its execution; (2) it fails to show when it is payable; (3) it fails to show to whom it is payable; (4) the averments fail to show appellant liable on the note either as principal, surety or indorser; (5) the allegations fail to show that due diligence was used by appellee bank to collect said note of the Winona Technical Institute, the principal thereof.

To the first paragraph of complaint appellant filed answer in ten paragraphs, the first of which was a general denial. The others, except the sixth, seventh, and ninth, in substance allege that appellee First State Bank is not the real party in interest; that appellee James H. Matchett is the real party in inter-

est; want of consideration; payment; that when appellee Matchett took the renewal or second principal note from Winona Technical Institute, he accepted the same without the indorsement of S. C. Dickey, who had indorsed the first princpal note. The substance of the sixth paragraph of answer is that in 1908, Winona Technical Institute requested appellant to sign the note sued upon as an accommodation indorser to enable it to use such note as collateral security in borrowing money; that thereupon, without any consideraton therefor, he signed said note as such accommodation indorser and delivered the same to Winona Technical Institute. The answer then alleges the borrowing of the money, the execution of the note on February 20, 1909, by Winona Technical Institute to Matchett for $2,000, due in sixty days, and that the note was indorsed by Solomon C. Dickey; that the note now sued on was used as collateral security for said note of February 20, 1909; appellee Matchett accepted in payment of said note of February 20, 1909, a note of like amount, due in sixty days, signed by Winona Technical Institute, but not indorsed or signed by said Dickey; that Matchett fraudulently assigned the note sued on to appellee First State Bank, after its maturity, to enable said bank to collect same as a *bona fide* holder for value, and to avoid defenses thereto against appellee Matchett. The seventh paragraph of answer is substantially like the sixth, except instead of alleging the second principal note was accepted as payment of the first, it is charged that the time of payment was extended without the knowledge or consent of appellant. The ninth paragraph is the same as the sixth, except the additional averment that the second principal note was accepted in payment of the first, and likewise the

third in payment of the second; that Matchett wrote upon the face of the second note "Paid, June 16, 1909, J. H. Matchett," and surrendered same to Winona Technical Institute. The answers to the second and third paragraphs of complaint were in the main similar to those addressed to the first paragraph. The sixteenth paragraph, addressed to the third paragraph of complaint, in substance charges that appellant executed the note sued on without any consideration and as an accommodation indorser only, and then sets out in detail the facts as above shown in regard to the several renewal notes for the money borrowed from Matchett.

Issues were joined on the affirmative paragraphs of answer and appellant also filed a cross-complaint, in which he sought to have the note sued on adjudged paid and satisfied, and he also asked an order directing the holder thereof to deliver the same to him, and that appellee Matchett be enjoined from transferring the same. Appellee Matchett also filed a cross-complaint against appellant, in which he sought to have any judgment rendered upon the note in suit direct that the property of Winona Technical Institute and of appellant be first levied upon and exhausted before such judgment be enforced against him. Issues were duly joined on all the pleadings, and on due request the court made a special finding of facts and stated its conclusions of law thereon.

The court found the facts to be substantially as alleged in the complaint, and we therefore set out only such portions of the finding as deal with questions that were in any way controverted at the trial. The finding shows the execution of the note in the form above set out on January 20, 1909; that appellant on request of Winona Technical Institute indorsed

his name on the back thereof, and authorized Solomon
C. Dickey, president of said institute, to deliver and
pledge said note as collateral security to any person,
firm or corporation who might thereafter loan money
to it, and authorized said Dickey to fill all blanks left
in said note by inserting therein the date and the
name of the payee or person from whom such loan
should be procured; that no consideration moved to
appellant for such indorsement, and he executed the
note only for the accommodation of Winona Tech-
nical Institute; that at the time the note was so exe-
cuted it was not known how much money would be
borrowed, nor that the same would be procured from
said Matchett; that the sum of $2,000 was borrowed
from Matchett on February 20, 1909, and the note of
the institute given therefor by S. C. Dickey, president,
due in sixty days, which note was indorsed by S. C.
Dickey, and the note executed by appellant was de-
livered to appellee Matchett as collateral security for
such loan; that at the time of the delivery of said
collateral note to Matchett said Dickey neglected to
fill the blanks therein, and nothing was said on that
subject by the parties to the transaction. The finding
also shows the execution of the renewal note on April
21, 1909, without the indorsement of Dickey, and the
several renewal notes as alleged; that the note in suit
was left as collateral security for said loan from Feb-
ruary 20, 1909, with each of said renewal notes, and
on each of such renewal notes there was written,
"Hubbard note as collateral," and the same was a
separate undertaking for the payment of the loan
aforesaid; that appellant had no knowledge until
more than two years after the execution of the sixth
renewal note on December 17, 1909, of the execution
of the former notes for said loan, or that the note of

February 20, 1909, had been indorsed by S. C. Dickey, or that the note so indorsed had been surrendered by appellee Matchett to the institute; that prior to June 14, 1912, appellee Matchett sent the note in suit to the Continental National Bank of Indianapolis for collection, and the same was returned unpaid; that on June 14, 1912, Matchett sold, assigned, transferred and delivered the sixth renewal note aforesaid to appellee bank, for value received, and at the same time delivered to said bank the note in suit duly assigned as alleged. The finding then sets out efforts to collect the note and some correspondence between Matchett and appellant in 1910 and 1912, in regard to the collection of the note and appellant's liability thereon and appellant's refusal to pay the same; that when the note of February 20, 1909, became due S. C. Dickey was solvent and able to pay the debt; that this suit was brought on November 14, 1912; that the debt for which the note in suit was held as collateral security is due and unpaid, and likewise the note sued on in this action; that it was the intention of appellant and of said Dickey that the name of the person, from whom the loan should be procured, as contemplated when the note in suit was exexcuted, should be inserted in the blank left for the name of the payee of the note, and that the date should be inserted to correspond with the date on which such loan was obtained, and that the failure to do so was due to the oversight and omission of said Solomon C. Dickey; that it was intended that the name of James H. Matchett should be inserted as payee of the note, and that the date thereof should be February 20, 1909.

The court stated its conclusions of law in substance as follows: (1) The law is with the plaintiff (appellee bank), and it is entitled to recover from James H.

Matchett and William H. Hubbard the sum of $2,200; (2) Matchett is entitled to the relief prayed in his cross-complaint; that the property of said Hubbard be first exhausted before the property of said Matchett be levied upon to pay and satisfy the judgment. The judgment follows the conclusions of law.

The principal questions arising upon the rulings of the court on the demurrers to the pleadings are identical with those presented by the exceptions to the conclusions of law and the assignment based thereon, and for that reason they will be considered together.

The first question suggested is based on the incompleteness of the note sued on by reason of the absence therefrom of the date of its execution and the name of the payee. The note in its incomplete form 1. is not negotiable under the law merchant in this state. *Gilpin* v. *People's Bank* (1909), 45 Ind. App. 52, 90 N. E. 91, and cases cited; *Nicely* v. *Commercial Bank, etc.* (1896), 15 Ind. App. 563, 44 N. E. 572, 57 Am. St. 245; *South Whitley Hoop Co.* v. *Union Nat. Bank* (1912), 53 Ind. App. 446, 101 N. E. 824; *Mitchell* v. *St. Mary* (1897), 148 Ind. 111, 113, 47 N. E. 224; *Glidden* v. *Henry* (1885), 104 Ind. 278, 1 N. E. 369, 54 Am. Rep. 316; 1 Daniel, Negotiable Instruments (6th ed.) §§83, 84, 99, 102, 103.

The note sued on is an "instrument in writing" given for the payment of money, and is negotiable under the statute so as to vest the property 2. thereof in an assignee or *bona fide* holder thereof for value. §§9071, 9072 Burns 1914, §§5501, 5502 R. S. 1881; *McWhorter* v. *Norris* (1893), 9 Ind. App. 490, 493, 34 N. E. 854, 37 N. E. 21; *Krieg* v. *Palmer Nat. Bank* (1912), 51 Ind. App. 34, 39,

95 N. E. 613; *Melton* v. *Gibson* (1884), 97 Ind. 158; *Mitchell* v. *St. Mary, supra.*

It is not seriously contended that the execution and .delivery of the note in its incomplete form authorized a *bona fide* holder thereof to insert the date and fill in the name of the payee in the appropriate blank left therefor in the note, but that, inasmuch as neither the date nor the name of the payee were actually so inserted, appellee bank acquired no right of action by reason of the alleged assignment and transfer of the note to it by, appellee Matchett.

In the absence of averments to show that the holder of such note acquired the same for value and was the owner thereof and the real party in interest in the suit, there is authority supporting the contention that a suit on such instrument payable otherwise than to bearer, cannot be maintained by the holder thereof, and that in the absence of such special averments proof of the instrument in such form will not support an action by the holder thereof to recover thereon. *Greenhow* v. *Boyle* (1843), 7 Blackf. 56; *Rich* v. *Starbuck* (1875), 51 Ind. 87, 89, and cases cited; 1 Daniel, Negotiable Instruments (6th ed.) §§ 142, 145.

But a *bona fide* holder for value of an instrument purporting to be a bill of exchange, which does not on its face show to whom it is payable, may maintain an action thereon against the persons who executed or indorsed such instrument, in its incomplete form, and under appropriate averments may show by parol proof from whom the consideration moved, to whom the instrument was delivered by the maker or indorser, and who is in fact the owner and *bona fide* holder thereof, and all the facts.

and circumstances attending the execution and transfer of the instrument.

In such cases the intention of the parties who put the instrument in circulation is the underlying and controlling principle, and when such intention is ascertained, either from the face of the instrument or by proof of extraneous facts, or from all of such sources, it should be followed, unless it contravenes some rule of law, for by so doing effect will be given to the letter and spirit of our Code, which requires actions to be brought in the name of the real party in interest. *Rich* v. *Starbuck, supra; Moore* v. *Pendleton* (1861), 16 Ind. 481, 483; *Ferry v. Jones* (1858), 10 Ind. 226; *Clark* v. *Walker* (1841), 6 Blackf. 82; *Gothrupt* v. *Williamson* (1878), 61 Ind. 599; *Wells* v. *Jackson* (1841), 6 Blackf. 40.

The absence of a date on the note in question *prima facie* renders the time of payment uncertain and affects the negotiability of the instrument,

4. but it may nevertheless support a valid obligation, and under the pleadings in this case the date could be properly inquired into and ascertained from the evidence. *Bank of Houston* v. *Day* (1909), 145 Mo. App. 410, 122 S. W. 756, 758; 1 Daniel, Negotiable Instruments §§83, 84, 143, 144, 145; 2 Am. and Eng. Ency. Law 255.

Appellant contends that, if liable at all, he is only liable as an indorser and entitled to all the rights and protection the law accords an indorser; that neither the facts pleaded nor found show such diligence on the part of the appellee bank as will establish liability against him.

Therefore we must determine the character of appellant's liability, if any, on the note under the peculiar facts of this case. While the facts are some-

what unusual, we believe the question is settled in Indiana under facts so analagous as to render the decision conclusive as to the nature and character of appellant's liability, and to show that he is liable primarily as a maker or surety, and not as an indorser. *Pool* v. *Anderson* (1888), 116 Ind. 88, 18 N. E. 445, 1 L. R. A. 712; *Oyler* v. *McMurray* (1893), 7 Ind. App. 645, 649, 34 N. E. 1004; *De Pauw* v. *Bank of Salem* (1891), 126 Ind. 553, 555, 25 N. E. 705, 26 N. E. 151, 10 L. R. A. 46; *Kealing* v. *Vansickle* (1881), 74 Ind. 529, 532, 39 Am. Rep. 101; *Wells* v. *Jackson, supra.*

In *Pool* v. *Anderson, supra,* Pool sued Spradling, Neff and Anderson on a nonnegotiable promissory note. Spradling and Neff signed the note on its face, and Anderson wrote his name across the back before it was delivered to Pool, the payee, who brought the suit. Anderson demurred to the complaint, and the court sustained the demurrer on the theory that he was liable as an indorser only and the complaint did not show facts sufficient to fix liability against him. Judge Mitchell wrote the opinion of the court, reversing the judgment, and, among other things, said: "The present case involves the liability of a stranger, who signed his name upon the back of a paper not negotiable by the law merchant, before it was delivered to the payee, who held the same when the suit was commenced. The inquiry is, What is the liability or obligation of one who thus signs to the payee? The decisions of different courts present an irreconcilable conflict of views upon the general subject under consideration. It will be noted, however, that the cases in other jurisdictions relate almost exclusively to notes negotiable as inland bills of exchange. Whatever diversity exists in the decided cases, it cannot be doubted that a stranger who writes his

name on the back of a promissory note before it is delivered, whether it be negotiable or nonnegotiable according to the law merchant, does so in order to give the maker credit, or the note currency, and with the intention to pledge himself in some shape for its payment. *Eilbert* v. *Finkbeiner*, 68 Pa. St. 243. All the authorities concur in holding that the act constitutes a contract which is to be construed in such a way as to render it available to carry into effect the intention of the parties, consistent with settled rules of law. *Good* v. *Martin*, 95 U. S. 90; *Rey* v. *Simpson*, 22 How. 341; 15 Cent. L. J. 82.'' The learned judge then reviewed the decisions on the subject beginning with *Wells* v. *Jackson, supra,* and pointed out certain inconsistencies in the decisions, and finally adopted the rule declared in *Wells* v. *Jackson, supra,* to the effect that the blank indorsement of nonnegotiable paper, made at or prior to its delivery, and unexplained by extrinsic testimony, confers upon the payee the authority to hold the indorser primarily liable on the original contract, as a surety or joint promisor, but that a similar unexplained indorsement of paper negotiable under the law merchant renders such indorser liable only as an indorser, with the usual and ordinary rights and privileges incident thereto. ''But that in either case, the liability designed to be assumed, and the authority intended to be given by the indorsement, may be explained by the attendant circumstances, and the *prima facie* responsibility be changed into one of another kind.'' Continuing, the opinion of Judge Mitchell states: ''The proposition * * * must resolve itself into the following inquiry: Can a stranger who signs an ordinary promissory note not negotiable by the law merchant, under the circumstances disclosed in the pres-

ent case, stand in the relation of an indorser to the payee to whom it is afterwards delivered, without a special contract to that effect? Upon principle there can be no other than a negative answer to this question. This conclusion follows from the fact that the liability of one whose name appears upon a promissory note, no matter when or where it is written, or what the character of the note is, must depend upon a contract which is either expressed in words or implied by law. *Seymour* v. *Mickey*, 15 Ohio St. 515. When a person other than the payee or indorsee signs his name upon the back of a note governed by the law merchant, before it has its inception, it may, without great impropriety, be held that commercial law supplies the undertaking into which he enters with the payee, which is in effect that if the maker fails to pay at maturity and the indorser is duly notified of the dishonor of the note, he will pay it. This, according to the rulings of this court, is the implied or commercial contract which the law imports into the transaction, in the absence of an express agreement of a different character, and a contract implied by law is as binding as if it were written in words. *Stack* v. *Beach*, 74 Ind. 571. To these rulings we adhere. This constitutes the person so signing, as between himself and payee, *prima facie* a first indorser. *Kealing* v. *Vansickle, supra,* 1 Daniel Neg. Inst., sections 714, 666. One cannot, however, become an indorser, in a commercial sense, of paper that is not negotiable according to the law merchant. *Vore* v. *Hurst, supra;* 1 Daniel Neg. Inst., section 709. Hence, the signature of a third person placed on the back of a note not so negotiable, before its delivery to the payee, creates no implied or commercial contract whatever. *Chaddock* v. *Vanness*, 35 N. J. L. 517. As has been re-

marked, it will be assumed that one who signs his name upon the back of a note, whatever its description may be, does so for some purpose, and that he intends to become responsible for its payment in pursuance of some contractual obligation. If, therefore, the law imports into the transaction no contract whatever, and there is no possibility of raising the ordinary obligation of an indorser, it must be assumed, until it appears whether any contract different from that written on the paper was entered into, and what the character of that contract was, that all those, other than the payee, who signed before the execution of the paper, whether upon the back or face, intended to become bound according to the terms of the note as joint promisors.  \*  \*  \*  Our conclusion, therefore, is, that when a person not the payee of a note, such as that involved in the present case, places his signature on the back of the paper at or prior to the time of its inception, without making an express contract defining the nature and extent of his undertaking, he will be held liable according to the rule in *Wells* v. *Jackson, supra,* upon the original contract, as a surety or joint promisor. This conclusion renders the stipulation in the note waiving notice of nonpayment wholly immaterial, as such a stipulation is relevant to notes governed by the law merchant, and which are capable of strict indorsement. A surety or joint promisor is bound to take notice of the default of his principal. As to either, notice of nonpayment is not necessary. *Fitch* v. *Citizens Nat'l Bank, supra; Scott* v. *Shirk,* 60 Ind. 160.''

The essential facts in the case of *Pool* v. *Anderson, supra,* are found in the case at bar, and the

5. fact that the name of the payee was not actually inserted is not a material difference. The

complaint warranted the proof of the circumstances under which the note was signed, the intention of the parties and the object to be attained.

Appellee Matchett, having furnished the money intended to be raised by use of the note in suit, obtained a definite interest in such note which, under 6. our statute, he could, and the findings show did, assign to appellee bank for a valuable consideration, whereby it became the real party in interest and entitled to collect whatever is due upon the obligation held as collateral security for the unpaid debt. §§ 9071-9072 Burns 1914, *supra*. 1 Daniel, Negotiable Instruments (6th ed.) §748; *Hawkins* v. *Fourth Nat. Bank* (1897), 150 Ind. 117, 122, 49 N. E. 957; *Mitchell* v. *St. Mary, supra.*

In executing the note sued on, appellant authorized its use as collateral security for any loan of any amount for any period of time obtainable 7. within the three years the note was to run before its maturity. By renewing the notes for which the note in suit was pledged as collateral security, the contract entered into by appellant was not changed, his liability was not increased, nor 8. the time of payment extended. The acceptance of the renewal note without the indorsement of Solomon C. Dickey, under the circumstances shown, did not in any way affect or violate the contract into which appellant had entered, for the continued use of the note in suit as collateral security without such indorsement, was fully within the intention of the parties and the plan originally adopted for raising the money to which appellant lent his name for the accommodation of the Winona Technical Institute.

The underlying principle by which a surety may be relieved from his contract by dealings or arrange-

ments between his principal and the creditor, to which he is not a party, is that there has been a departure from the contract which may possibly vary or enlarge his liability without his consent.

The debt was not paid by the renewals but remained the same throughout. The signing of the first note by Dickey and his failure to indorse subsequent renewal notes were purely incidental matters, wholly unknown to appellant at the time of their occurrence, and entirely foreign to the contract by which he obligated himself when he signed and delivered the note under the circumstances shown in the case. 2 Brand, Suretyship (2d ed.) §§388-397; Jones, Collateral Security §541, and cases; 1 Daniel, Negotiable Instruments (6th ed.) §748; *King* v. *Doane* (1890), 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 84, 87; *Hawkins* v. *Fourth Nat. Bank, supra; Dayton Nat. Bank* v. *Merchants' Nat. Bank* (1881), 37 Ohio St. 208; *Malbon* v. *Southard* (1853), 36 Me. 147; *Delaware, etc., Ins. Co.* v. *Haser* (1901), 199 Pa. 17, 48 Atl. 694, 85 Am. St. 763; *Bangs* v. *Strong* (1843), 7 Hill (N. Y.) 250, 42 Am. Dec. 64.

From the foregoing we have reached the conclusion that the court did not err in any of the rulings on the demurrers to pleadings complained of nor in its conclusions of law stated on the finding of facts. Judgment affirmed.

McNutt, Hottel, Caldwell, Ibach, JJ., and Moran, P. J., concur.

Note.—Reported in 114 N. E. 642. Bills and notes: renewal note as discharge of original, Ann. Cas. 1915A 1084; negotiable note, what constitutes, Ann. Cas. 1912D 4. See under (1) 3 C. J. 1434; (2) 10 Cyc 381; (4) 17 Cyc 425.