GRADELESS ET AL. *v.* GRADELESS, ADMINISTRATOR.

[No. 16,927. Filed June 22, 1943. Rehearing denied October 12, 1943.]

*Cleon H. Foust,* of Columbia City, for appellants.

*Ralph F. Gates* and *Benton E. Gates,* both of Columbia City, for appellee.

DOWELL, J.—This was an action by the plaintiff below, appellee here, one David Gradeless as administrator of the estate of Cleveland Gradeless, deceased, against Cecil Gradeless and Carmen Gradeless, appellants, upon two promissory notes found in the lock box of appellee's decedent, one undated in the sum of $1,117.35, the other dated August 1, 1930, in the sum of $90.00, and each payable one year after date. The undated note bore a notation "Due March 1, 1930." Neither of said notes bore Indiana Intangible Tax stamps of any year or denomination. The note for the larger amount called for interest at the rate of 7% per annum from date until due and 8% from maturity until paid and attorney's fees, that for the lesser sum interest at the rate of 4% payable annually from date.

The complaint was answered in bar by the defendants in four paragraphs setting up, (1) plea of payment, (2) illegal consideration in that no intangible tax had been paid on either note and that such intangible tax with penalty thereon upon said notes was wholly unpaid.

Upon the issues thus joined the cause was tried to a jury with a verdict resulting in favor of the plaintiff in the sum of $2,365.17 followed by judgment accordingly.

The sole error assigned is the overruling of appellants motion for a new trial which, in addition to challenging the sufficiency of the evidence and the legality of the

14

verdict predicates error on, (1) the admission in evidence of the two notes as plaintiff's exhibits A and B, the same not bearing intangible tax stamps, (2) the giving of the court's instruction numbered 2, and (3) the giving of the court's instruction numbered 11.

No question being raised as to the validity of plaintiff's exhibit A merely by reason of the fact that same was undated we assume that the evidence, including the memorandum thereon "Due March 1st, 1930," and the fact that the note was payable one year after date, was sufficient to show that the date of execution was one year prior to March 1, 1930. See *Hubbard* v. *First State Bank, etc.* (1918), 67 Ind. App. 47, 114 N. E. 642; § 19-106, Burns' 1933.

In view of the fact, therefore, that both notes were executed prior to the effective date of the Indiana Intangible Tax Act (1933) and were valid and existing obligations before and at that time we are confronted with the proposition of construing the said act in the light of such fact.

The section of the act relied upon by appellants in support of their contentions is Acts 1933, ch. 81, § 30, p. 523, § 64-930, Burns' 1933 which is as follows:

"No intangible in respect of and by which the tax imposed by this act is measured, shall be valid or enforceable, nor shall the same be sold, assigned, transferred, renewed, removed, consigned, mailed or shipped unless and until all taxes and penalties accrued on account thereof shall have been paid. Any sale, renewal or assignment of any such intangibles on account of and by which the taxes imposed by this act are measured have not been paid shall be null and void."

The methods of payment, as provided by the original act and amendments thereto are several, among them being: (1) The affixing of stamps to the instrument;

(2) by its registration with the tax commission and payment to them of the tax due; (3) by payment of the tax to the treasurer of the county where the taxpayer resides or where the intangible is located after same has been entered upon the tax duplicate as omitted property; (4) by presenting the intangible to the tax commission for assessment and payment to the commission of the amount of the assessment.

The methods of enforcement and collection are, likewise, several in number.

It is obvious, therefore, that the presence on or absence from an intangible of tax stamps cannot of itself answer the question as to whether the tax has been paid nor constitute the sole evidence of compliance or noncompliance with the terms of the Intangible Tax Act. Nor can the mere presence of stamps on an intangible of itself bespeak the fact that the full amount of tax actually due plus penalties, if any, has been paid, for the amount in face value of the stamps may be at variance with the actual value of the intangible and represent less tax than is actually due. Likewise, the absence of stamps from the intangible cannot alone constitute a *prima facie* showing, that the tax has not been paid for the taxpayer may have complied fully with the requirements of the act by full payment in one of the alternative modes provided by the act and the evidence of payment would not and could not appear upon the intangible itself.

A consideration of Acts 1933, ch. 81, § 30 (supra) in its applicability to the facts here involved convinces us that the Legislature did not intend to impair the validity of existing obligatons but to suspend their effectiveness and force for all purposes until the requirements of the statute were satisfied by

payment of the tax in any one of the modes as provided therein.

Nor can we read § 26 of the Act (§ 64-926, Burns' 1933) in connection with the other provisions thereof and come to any conclusion other than that this article was intended to and does govern under such circumstances as are presented here. That instruments and documents often are lost or hidden away and remain so for long periods of time is a matter of almost universal knowledge. Equally well known is the human tendency toward inadvertence and neglect. Was it the legislative intent that upon discovery of such a document or instrument with tax unpaid, or upon discovery of neglect or failure to comply with the requirements of the act, the defection could never be remedied, or that such circumstances could render an intangible forever impotent, if otherwise enforceable? We think not.

The act is purely a revenue measure. It imposes a tax and adds a penalty for non-payment when due. It provides several modes of payment and of enforcement thereof. It is designed to produce revenue to the State of Indiana and nothing more. When the tax, plus penalties if any, is paid the State of Indiana is satisfied. The purpose and intent of the act, as we believe, is to expedite and enforce the payment of moneys due the State under its provisions by suspending the force and effect for all purposes of all intangibles within its purview until such moneys are paid in full.

Thus no right of action exists on an intangible so long as the requirements of the act remain unsatisfied. The moment, however, the tax, plus penalties if any, is paid, the right of action is revived. There is an abatement on the one hand and a revival on the other.

So as we view the matter an action on an intangible non-tax-paid is an action prematurely brought, i. e., commenced by the moving party before his right of action has arisen or revived.

In the instant case this court cannot ascertain from the record whether the tax was paid or unpaid in one or another of the modes prescribed by the law on appellee's notes, herein referred to as plaintiff's exhibits A and B. From the record it appears only that the exhibits did not bear stamps.

If appellee commenced his action before the full amount of tax plus penalties, if any, was paid in full his action was prematurely brought.

Such matters go to abatement of the action and not to the defense. Appellant should have pleaded in abatement instead of in bar. By failing so to do he waived his right to raise the question. *Moore* v. *Sargent* (1887), 112 Ind. 484, 14 N. E. 466; *Pittsburgh, etc., R. Co.* v. *Schmuck* (1914), 181 Ind. 323, 103 N. E. 325.

Nor, as a matter of public policy, is the State of Indiana harmed. It can still enforce the payment of its tax by any one of several methods or appellee can still make voluntary payment.

Under such circumstances as are apparent here we cannot believe that a court could be justified in summarily rejecting an intangible because, and merely because, of the absence of stamps therefrom. The question of whether the tax thereon is actually paid or unpaid requires an inquiry. The absence of stamps gives rise to a question, it is true, but a party to a lawsuit, if he desires to take personal advantage of what he believes to be a noncompliance with the requirements of the act, should pursue that

inquiry in the orderly manner laid down by well settled rules of pleading. That the Indiana Tax Commission may act summarily in such cases is not an indication that a private individual or a court can do likewise.

In the light of the conclusions reached herein we cannot perceive error in the admission in evidence of plaintiff's exhibits A and B, nor in the giving of the court's instruction numbered 2 which was as follows:

"To this complaint the defendants have filed their answer in four paragraphs.

"By paragraphs (1) and (2) of their answer, the defendants admit the execution of the notes sued on in the complaint, but deny that the sums claimed by plaintiff, as attorney fees, are reasonable.

"By paragraph (3) of their answer the defendants claim that they fully paid both of the notes sued on in plaintiff's complaint before this action was commenced.

"By the 4th paragraph the defendants aver that the notes sued upon do not bear intangible tax stamps and that the intangible tax on said notes has not been paid. As to this answer the court instructs you, that such 4th paragraph of answer is not a defense available to the defendants and you should not give any consideration to whether or not the intangible tax on these notes has been paid.

"If any intangible tax is due the state on the notes sued upon, the administrator will be required to pay the same."

The court's instruction numbered 11 asserted by appellant to be erroneous was to the effect that the jury might consider, along with all other evidence in the case, the fact, if it found it to be a fact, that the notes sued on were in the possession of the decedent at the time of his death, in determining

whether or not the notes had been paid by the makers in the lifetime of the deceased.

In the light of the well settled rule that the introduction in evidence of the notes sued on *prima facie* entitles the plaintiff to a recovery we cannot believe the instruction to be erroneous. *Farber* v. *National Forge & Iron Co. et al.* (1894), 140 Ind. 54, 39 N. E. 249; *Welch* v. *Watts* (1857), 9 Ind. 115; *Baum* v. *Palmer* (1905), 165 Ind. 513, 76 N. E. 108; *Conner* v. *Martin* (1910), 46 Ind. App. 141, 92 N. E. 3.

Furthermore the court by its instructions numbered 2, 4, 6 and 7 correctly informed the jury on the defense of payment.

Evidence in plaintiff's behalf in the trial court consisted chiefly of the two notes, testimony to the effect that they were found among other property, in the lock box of decedent after his death and testimony identifying appellants' signatures thereon. There was some slight additional testimony that decedent had discussed the notes with at least two witnesses but the substance of the conversations was rejected by the court as inadmissible. Defendants below, appellants here, called the appellee administrator as their witness and from him elicited testimony that decedent, in conversations which took place between 1935 and the fall of 1936 had stated that appellants had paid him $175.00 and that this sum was the balance due upon the two notes. The secretary of the Farmers Loan and Trust Company had previously identified defendants' exhibit 2 as a check in that amount dated April 30, 1936, drawn by appellant Cecil Gradeless in favor of decedent Cleveland Gradeless and cashed by decedent on May 1, 1936.

Appellants, challenging the sufficiency of the evidence, urge that the evidence of payment is undisputed.

Certainly the only testimony on this point was ▮ that of the appellee administrator who testified as set out hereinabove. As against this we have the two notes themselves, definitely proved to have been in the possession of the decedent prior to and at the time of his death, plus some slight referential testimony, of little value on the question of payment or nonpayment. The notes were evidence, as much so as the testimony of the witnesses, and whether one outweighed the other was a question for the jury. Payment is a question of fact and not of law. Whether a given transaction, in a controverted case, constitutes a payment is a question for the jury and its verdict will not be disturbed on the weight of evidence. *Braden, Administrator,* v. *Lemmon et al.* (1891), 127 Ind. 9, 26 N. E. 476; *The School Town of Monticello* v. *Grant et al.* (1885), 104 Ind. 168, 1 N. E. 302; *Miller, Administrator,* v. *Eldridge* (1891), 126 Ind. 461, 27 N. E. 132; *Barrett* v. *Sipp* (1912), 50 Ind. App. 304, 98 N. E. 310; *Hays* v. *Hays* (1912), 49 Ind. App. 298, 97 N. E. 198.

After judgment upon the verdict the appellee, presumably upon the evidence as to the payment of $175.00, entered a remittitur of that amount.

We perceive no error.

Judgment affirmed.

NOTE.—Reported in 49 N. E. (2d) 398.